**INTERACTIVE MEDIA ENTERTAIN-MENT AND GAMING ASSOCIATION INC, a not for profit corporation of the State of New Jersey, Appellant**

v.

**ATTORNEY GENERAL OF the UNITED STATES; Federal Trade Commission; Federal Reserve System.**

No. 08–1981.

United States Court of Appeals, Third Circuit.

Argued July 7, 2009.

Filed: Sept. 1, 2009.

Eric M. Bernstein (Argued) Eric M. Bernstein & Associates, Warren, NJ, Ste-

phen A. Saltzburg (Argued) George Washington University, Washington, DC, for Appellant.

Nicholas J. Bagley (Argued) Jacqueline E. Coleman United States Department of Justice, Washington, DC, for Appellee.

Before: SLOVITER, AMBRO, and JORDAN Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Congress enacted the Unlawful Internet Gambling Enforcement Act of 2006, 31 U.S.C. § 5361 *et seq.* (the "Act"), because "traditional law enforcement mechanisms are often inadequate for enforcing gambling prohibitions or regulations on the Internet, especially where such gambling crosses State or national borders." 31 U.S.C. § 5361(a)(4). Congress also found that "Internet gambling is primarily funded through personal use of payment system instruments, credit cards, and wire transfers." 31 U.S.C. § 5361(a)(1).

Appellant Interactive Media Entertainment & Gaming Association, Inc. ("Interactive"), is a New Jersey not-for-profit corporation that collects and disseminates information related to electronic and Internet-based gaming and whose members are businesses that provide gaming services, including Internet gambling, to individuals located throughout the United States and the world. It raises a number of facial constitutional challenges to the Act. The District Court dismissed Interactive's claims, some on standing grounds and others on the merits. It appeals.

## I.

The Act provides that "[n]o person engaged in the business of betting or wagering[1] may knowingly accept, in the connection with the participation of another person in unlawful Internet gambling," various forms of financial instruments (such as credit cards, electronic fund transfers and checks). 31 U.S.C. § 5363. The Act defines "unlawful Internet gambling" as "to place, receive, or otherwise knowingly transmit a bet or wager by any means which involves the use, at least in part, of the Internet where such bet or wager is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received, or otherwise made." 31 U.S.C. § 5362(10)(A).

Any person who violates § 5363 commits a crime punishable by fine and/or up to five years imprisonment. 31 U.S.C. § 5366(a). Moreover, upon conviction of that criminal offense, the defendant may be permanently enjoined from engaging in the making of bets or wagers. 31 U.S.C. § 5366(b). Finally, the Act also provides that federal and state authorities may bring civil proceedings to enjoin any transaction prohibited under the Act, 31 U.S.C. § 5365, and mandates that the Secretary of the Treasury and the Board of Governors of the Federal Reserve System enact regulations requiring certain financial institutions "to identify and block or otherwise prevent or prohibit" the transactions barred by § 5363. 31 U.S.C. § 5364(b)(1).[2]

Interactive filed a complaint alleging that the Act was facially unconstitutional

---

1. The phrase " 'business of betting or wagering' does not include the activities of a financial transaction provider, or any interactive computer service or telecommunications service." 31 U.S.C. § 5362(2). Thus, the criminal prohibition contained in § 5363 of the Act applies only to gambling-related businesses, not any financial intermediary or Internet-

service provider whose services are used in connection with an unlawful bet.

2. The Department of the Treasury and Board of Governors of the Federal Reserve have jointly adopted a final rule to implement this statutory mandate. Prohibition on Funding of Unlawful Internet Gambling, 73 Fed.Reg.

and contrary to the United States' treaty obligations. It sought to enjoin the enforcement of the Act as well as the promulgation of regulations thereunder. After Interactive moved for a preliminary injunction, the District Court granted the Government's cross-motion to dismiss the complaint.

Interactive claimed the Act violated the First Amendment and the Government argued that Interactive lacked standing. The District Court rejected the Government's standing defense but, when it reached the merits, it rejected Interactive's expressive association claim because the Act "does not have any adverse impact, much less a significant one, on the ability of the plaintiff and its members to express their views on Internet gambling." App. at 21. Indeed, the District Court noted that the conduct prohibited by the Act—the taking of another's money in connection with illegal gambling—does not involve any "communicative element" and "essentially facilitates another's criminal act." App. at 23.

Next, the District Court rejected Interactive's commercial speech claim because the Act "does not actually implicate First Amendment interests" given that the "acceptance of a financial transfer is not speech," and even if it were, the Act only applies where the transfer is related to illegal gambling. App. at 25.

The District Court also rejected Interactive's overbreadth and vagueness arguments. As to the First Amendment overbreadth argument, the Court concluded that the Act "does not implicate any form of protected expression, and thus there is no overbreadth problem." App. at 26. As to the due process vagueness claim, the Court rejected that argument because the Act's prohibitions "are not 'in terms so vague that persons of ordinary intelligence must necessarily guess at its meaning and differ as to its application.'" App. at 26 (quoting *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 268 (3d Cir.2003)).

The District Court also rejected Interactive's claim that the Act violates the privacy rights of individual gamblers betting online from their homes on the ground that Interactive lacked standing to assert claims on behalf of such gamblers. In the alternative, it rejected Interactive's privacy claim on the merits because the gamblers' conduct did not implicate any substantive due process rights.

The District Court also rejected Interactive's claims that the Act violates the United States' treaty obligations on standing grounds and, alternatively, on the merits. It rejected Interactive's claim that the Act violates the *ex post facto* clause because the Act is purely prospective. Finally, it rejected Interactive's Tenth Amendment claim because, as a private party, it lacked standing to pursue it.[3]

## II.

Interactive raises two primary arguments on appeal. First, it contends that the Act is void for vagueness because the statutory phrase "unlawful Internet gambling" lacks an "ascertainable and workable definition." Appellant's Br. at 25.[4]

---

69382–01 (November 18, 2008). Those regulations are not at issue here.

**3.** The District Court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We review de novo a district court's grant of a motion to dismiss for failure to state a claim. *Sands v. McCormick*, 502 F.3d 263, 267 (3d Cir.2007).

**4.** The government contends that Interactive waived its vagueness argument because it did not raise the issue before the District Court. Although Interactive did not include a separate count in its complaint raising its vagueness claim, its complaint did allege that the Act failed to give adequate notice of the conduct criminalized—the gravamen of a vagueness challenge. Moreover, the District Court

The Supreme Court has explained that a statute is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams,* — U.S. ——, 128 S.Ct. 1830, 1845, 170 L.Ed.2d 650 (2008). Where, as here, a plaintiff raises a facial challenge to a statute on vagueness grounds, the plaintiff "must demonstrate that the law is impermissibly vague in *all* of its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 497, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) (emphasis added).

We reject Interactive's vagueness claim. The Act prohibits a gambling business from knowingly accepting certain financial instruments from an individual who places a bet over the Internet if such gambling is illegal at the location in which the business is located or from which the individual initiates the bet. 31 U.S.C. §§ 5362(10)(A), 5363. Thus, the Act clearly provides a person of ordinary intelligence with adequate notice of the conduct that it prohibits.

Further, the Act cannot be deemed impermissibly vague in all its applications. For example, several states prohibit all gambling activity (except non-commercial, social gambling not at issue here) by persons within the state and/or specifically ban Internet gambling. *See, e.g.,* Haw. Rev.Stat. §§ 712–1220(4), 712–1223; Or. Rev.Stat. § 167.109. Thus, if a person in Hawaii places a bet over the Internet, a gambling business that knowingly accepts a financial instrument in connection with that bet would unambiguously be acting in violation of the Act. Similarly, a gambling business located in Oregon would violate the Act if it knowingly accepted a financial instrument in connection with Internet gambling prohibited by that state's law.

It is true, as Interactive notes, that the Act does not itself outlaw any gambling activity, but rather incorporates other Federal or State law related to gambling.[5] *See* 31 U.S.C. § 5362(10). However, "a statute is not unconstitutionally vague merely because it incorporates other provisions by reference; a reasonable person of ordinary intelligence would consult the incorporated provisions." *United States v. Iverson,* 162 F.3d 1015, 1021 (9th Cir.1998). Similarly, the fact that gambling may be prohibited in some states but permitted in others does not render the Act unconstitutionally vague. *See United States v. Tripp,* 782 F.2d 38, 42 (6th Cir.1986) (noting that a federal criminal statute may "incorporate[ ] state law for purposes of defining illegal conduct ... even if the result is that conduct that is lawful under the federal statute in one state is unlawful in another").

Interactive also contends that it will often be difficult to determine the jurisdiction from which an individual gambler initiates a bet over the Internet, and consequently, whether the bet is unlawful. However, "[w]hat renders a statute vague

deemed the issue to be before it and rejected Interactive's claim on the merits. The issue is properly before us.

5. Relatedly, Interactive notes that some of its members operate gambling websites from outside the United States and contends that the Act is ambiguous as to whether such members could face criminal sanctions under the Act if they engaged in financial transactions with a gambler who placed a bet from a state that prohibited such gambling. However, the Act unambiguously prohibits such transactions and we note that it "has long been settled law that a country can regulate conduct occurring outside its territory which causes harmful results within its territory." *Laker Airways Ltd. v. Sabena, Belgian World Airlines,* 731 F.2d 909, 922 (D.C.Cir.1984).

is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."[6] *Williams*, 128 S.Ct. at 1846; *see also Trojan Techs., Inc. v. Pennsylvania*, 916 F.2d 903, 915 (3d Cir.1990) ("Inability to satisfy a clear but demanding standard is different from inability in the first instance to determine what the standard is.").

Interactive also raises a hypothetical in which a gambler in a state that prohibits all gambling makes a bet over the Internet with a gambling business in a foreign jurisdiction that permits such activity. According to Interactive, if the law of the foreign jurisdiction provides that the bet is deemed to be placed and received in that jurisdiction, the Act becomes unconstitutionally vague because it is impossible to know where the bet was placed as a matter of law.

However, Interactive does not point to anything in the language of the Act to suggest that Congress meant anything other than the physical location of a bettor or gambling business in the definition of "unlawful Internet gambling." Further, to the extent that Interactive's hypothetical raises a vagueness problem, it is not with the Act, but rather with the underlying state law. It bears repeating that the Act itself does not make any gambling activity illegal. Whether the transaction in Interactive's hypothetical constitutes unlawful Internet gambling turns on how the law of the state from which the bettor initiates the bet would treat that bet, i.e., if it is illegal under that state's law, it constitutes "unlawful Internet gambling" under the Act.

In sum, we must reject Interactive's facial challenge to the Act. Simply put, a gambling business cannot knowingly accept the enumerated financial instruments in connection with a bet that is illegal under any Federal or State law applicable in the jurisdiction in which the bet is initiated or received. Thus, the Act "provide[s] a person of ordinary intelligence fair notice of what is prohibited." *Williams*, 128 S.Ct. at 1845.

## III.

Next, Interactive contends that the District Court erred in rejecting its claim that the Act violated a constitutional right of individuals to engage in gambling-related activity in the privacy of their homes. As noted above, the District Court held that Interactive lacked standing to assert the rights of third-party gamblers, and alternatively, that the claim failed on the merits.

"It is a well-established tenet of standing that a 'litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.'" *Pennsylvania Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 288 (3d Cir. 2002) (quoting *Powers v. Ohio*, 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)). However, this "prohibition is not

---

**6.** Interactive also contends the Act's requirement that certain financial institutions create procedures to block transactions prohibited by the Act encourages arbitrary and discriminatory enforcement of the Act. However, these financial institutions are only required to block transactions prohibited by § 5363, and as discussed above, we conclude that § 5363 provides adequate notice so as to avoid any vagueness problem. Moreover, we note that the duty of financial institutions to block or restrict transactions barred by the Act is not materially different from similar duties imposed on financial institutions under other federal law. *See* H.R.Rep. No. 109–412, pt. 1, at 11 (2006).

invariable and our jurisprudence recognizes third-party standing under certain circumstances." *Id.* Indeed, the third-party standing doctrine is not rooted in the constitutional requirements for standing. Instead, "courts have imposed a set of prudential limitations on the exercise of federal jurisdiction over third-party claims." *Id.* at 287 (citing *Bennett v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)).

"To successfully assert third-party standing: (1) the plaintiff must suffer injury; (2) the plaintiff and the third party must have a 'close relationship'; and (3) the third party must face some obstacles that prevent it from pursuing its own claims." *Nasir v. Morgan*, 350 F.3d 366, 376 (3d Cir.2003).[7] The District Court concluded that Interactive could not satisfy either the second or third prongs of this test. We share the District Court's doubts regarding Interactive's standing to assert these claims, particularly because Interactive does not itself have any relationship with individual gamblers, but rather seeks to assert third-party standing based on its members' relationships with such gamblers. However, as noted above, the limitations on third-party standing are prudential requirements developed by the courts, not jurisdictional requirements imposed by Article III of the constitution. Accordingly, we need not decide whether Interactive has standing because, even assuming that it does, we agree with the District Court that Interactive's claim clearly fails on the merits.

In its effort to locate a constitutional privacy right to engage in Internet gambling from one's home, Interactive looks primarily to *Lawrence v. Texas*, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), and *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738 (5th Cir.2008). Interactive's reliance on those cases is misplaced.

■ Both *Lawrence* and *Earle* involved state laws that barred certain forms of sexual conduct between consenting adults in the privacy of the home. *Lawrence*, 539 U.S. at 567, 123 S.Ct. 2472; *Earle*, 517 F.3d at 744. As the Supreme Court explained in *Lawrence*, such laws "touch[ ] upon the most private human conduct, sexual behavior, and in the most private of places, the home." 539 U.S. at 567, 123 S.Ct. 2472. Gambling, even in the home, simply does not involve any individual interests of the same constitutional magnitude. Accordingly, such conduct is not protected by any right to privacy under the constitution.[8] *Cf. Am. Future Sys., Inc. v. Pennsylvania State Univ.*, 688 F.2d 907, 915–16 (3d Cir.1982) ("We are unwilling to extend the constitutional right of privacy to commercial transactions completely unrelated to fundamental personal rights . . . .").

**7.** As the District Court correctly held, Interactive cannot assert standing for this claim based on principles of associational standing because it does not allege that individual gamblers, as opposed to gambling-related businesses, are among its members.

**8.** Before the District Court, Interactive primarily pursued a claim that the Act violated the First Amendment. Although Interactive stated at oral argument that it had not abandoned that claim, it only tangentially mentions this argument in its papers to this court. In any event, the Act only criminalizes the knowing acceptance of certain financial instruments in connection with unlawful gambling. Simply put, such conduct lacks any "communicative element" sufficient to bring it within the ambit of the First Amendment. *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968).

## IV.

For the above-stated reasons, we will affirm the judgment of the District Court.