Justice Kennedy,
concurring.
For the reasons the Court explains, the act of casting an official vote is not itself protected by the Speech Clause of the First Amendment; and I join the Court’s opinion.
It does seem appropriate to note that the opinion does not, and on this record should not, consider a free speech contention that would have presented issues of considerable import, were it to have been a proper part of the case. Neither in the submissions of the parties to this Court defining the issues presented, nor in the opinion of the Nevada Supreme Court, were the Nevada statutory provisions here at issue challenged or considered from the standpoint of burdens they impose on the First Amendment speech rights of legislators and constituents apart from an asserted right to engage in the act of casting a vote.
The statute may well impose substantial burdens on what undoubtedly is speech. The democratic process presumes a constant interchange of voices. Quite apart from the act of voting, speech takes place both in the election process and during the routine course of communications between and among legislators, candidates, citizens, groups active in the political process, the press, and the public at large. This speech and expression often finds powerful form in groups and associations with whom a legislator or candidate has long and close ties, ties made all the stronger by shared outlook *130 and civic purpose. The process is so intricate a part of communication in a democracy that it is difficult to describe in summary form, lest its fundamental character be understated. It may suffice, however, to note just a few examples.
Assume a citizen has strong and carefully considered positions on family life, the environment, economic principles, criminal justice, religious values, or the rights of persons. Assume, too, that based on those beliefs, he or she has personal ties with others who share those views. The occasion may arise when, to promote and protect these beliefs, close friends and associates, perhaps in concert with organized groups with whom the citizen also has close ties, urge the citizen to run for office. These persons and entities may offer strong support in an election campaign, support which itself can be expression in its classic form. The question then arises what application the Nevada statute has if a legislator who was elected with that support were to vote upon legislation central to the shared cause, or, for that matter, any other cause supported by those friends and affiliates.
As the Court notes, Nev. Rev. Stat. §281A.420(2) (2007) provides:
“[A] public officer shall not vote upon or advocate the passage or failure of, but may otherwise participate in the consideration of, a matter with respect to which the independence of judgment of a reasonable person in his situation would be materially affected by . . . [h]is commitment in a private capacity to the interests of others.”'
There is, in my view, a serious concern that the statute imposes burdens on the communications and expressions just discussed. The immediate response might be that the statute does not apply because its application is confined to the legislator’s “commitment in a private capacity to the interests of others.” That proposition may be a debatable one. At least without the benefit of further submissions or argument or explanation, it seems that one fair interpretation, if *131 not the necessary one, is that the statute could apply to a legislator whose personal life is tied to the longstanding, close friendships he or she has forged in the common cause now-at stake. , .
The application of the statute’s language to the case just supposed, and to any number of variations on the supposition, is not apparent. And if the statute imposes unjustified burdens on speech or association protected by the First Amendment, or if it operates to chill or suppress the exercise of those freedoms by reason of vague terms or overbroad coverage, it is invalid. See United States v. Williams, 553 U. S. 285, 292-293, 304 (2008). A statute of this sort is an invitation to selective enforcement; and even if enforcement is undertaken in good faith, the dangers of suppression of particular speech or associational ties may well be too significant to be accepted. See Gentile v. State Bar of Nev., 501 U. S. 1030, 1051 (1991).
The interests here at issue are at the heart of the First Amendment. “[T]he First Amendment has its fullest and most urgent application to speech uttered during a campaign for political office.” Eu v. San Francisco County Democratic Central Comm., 489 U. S. 214, 223 (1989) (internal quotation marks omitted). And the Court has made it clear that “the right of citizens to band together in promoting among the electorate candidates who espouse their political views” is among the First Amendment’s most pressing concerns. Clingman v. Beaver, 544 U. S. 581, 586 (2005) (internal quotation marks omitted).
The constitutionality of a law prohibiting a legislative or executive official from voting on matters advanced by or associated with a political supporter is therefore a most serious matter from the standpoint of the logical and inevitable burden on speech and association that preceded the vote. The restriction may impose a significant burden on activities protected by the First Amendment. As a general matter, citizens voice their support and lend their aid because they *132 wish to confer the powers of public office on those whose positions correspond with their own. That dynamic, moreover, links the principles of participation and representation at the heart of our democratic government. Just as candidates announce positions in exchange for citizens’ votes, Brown v. Hartlage, 456 U. S. 45, 55-56 (1982), so too citizens offer endorsements, advertise their views, and assist political campaigns based upon bonds of common purpose. These are the mechanisms that sustain representative democracy. See ibid.
The Court has held that due process may require recusal in the context of certain judicial determinations, see Caperton v. A. T. Massey Coal Co., 556 U. S. 868 (2009); but as the foregoing indicates, it is not at all clear that a statute of this breadth can be enacted to extend principles of judicial impartiality to a quite different context. The differences between the role of political bodies in formulating and enforcing public policy, on the one hand, and the role of courts in adjudicating individual disputes according to law, on the other, see ante, at 124, may call for a different understanding of the responsibilities attendant upon holders of those respective offices and of the legitimate restrictions that may be imposed upon them.
For these reasons, the possibility that Carrigan was censured because he was thought to be beholden to a person who helped him win an election raises constitutional concerns of the first magnitude.
As the Court observes, however, the question whether Nevada’s recusal statute was applied in a manner that burdens the First Amendment freedoms discussed above is not presented in this case. Ante, at 128-129.