*288 Justice Scalia
delivered the opinion of the Court.
Section 2252A(a)(3)(B) of Title 18, United States Code, criminalizes, in certain specified circumstances, the pandering or solicitation of child pornography. This case presents the question whether that statute is overbroad under the First Amendment or impermissibly vague under the Due Process Clause of the Fifth Amendment.
I
A
We have long held that obscene speech — sexually explicit material that violates fundamental notions of decency — is not protected by the First Amendment. See Roth v. United States, 354 U. S. 476,484-485 (1957). But to protect explicit material that has social value, we have limited the scope of the obscenity exception, and have overturned convictions for the distribution of sexually graphic but nonobscene material. See Miller v. California, 413 U. S. 15, 23-24 (1973); see also, e. g., Jenkins v. Georgia, 418 U. S. 153, 161 (1974).
Over the last 25 years, we have confronted a related and overlapping category of proscribable speech: child pornography. See Ashcroft v. Free Speech Coalition, 535 U. S. 234 (2002); Osborne v. Ohio, 495 U. S. 103 (1990); New York v. Ferber, 458 U. S. 747 (1982). This consists of sexually explicit visual portrayals that feature children. We have held that a statute which proscribes the distribution of all child pornography, even material that does not qualify as obscenity, does not on its face violate the First Amendment. See id., at 751-753, 756-764. Moreover, we have held that the government may criminalize the possession of child pornography, even though it may not criminalize the mere possession of obscene material involving adults. Compare Os *289 borne, supra, at 111, with Stanley v. Georgia, 394 U. S. 557, 568 (1969).
The broad authority to proscribe child pornography is not, however, unlimited. Four Terms ago, we held facially over-broad two provisions of the federal Child Pornography Prevention Act of 1996 (CPPA). Free Speech Coalition, 535 U. S., at 258. The first of these banned the possession and distribution of “ ‘any visual depiction’ ” that “ ‘is, or appears to be, of a minor engaging in sexually explicit conduct,’” even if it contained only youthful-looking adult actors or virtual images of children generated by a computer. Id., at 239-241 (quoting 18 U. S. C. § 2256(8)(B)). This was invalid, we explained, because the child-protection rationale for speech restriction does not apply to materials produced without children. See 535 U. S., at 249-251, 254. The second provision at issue in Free Speech Coalition criminalized the possession and distribution of material that had been pandered as child pornography, regardless of whether it actually was that. See id., at 257 (citing 18 U. S. C. § 2256(8)(D)). A person could thus face prosecution for possessing unobjectionable material that someone else had pandered. 535 U. S., at 258. We held that this prohibition, which did “more than prohibit pandering,” was also facially overbroad. Ibid.
After our decision in Free Speech Coalition, Congress went back to the drawing board and produced legislation with the unlikely title of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003,117 Stat. 650. We shall refer to it as the Act. Section 503 of the Act amended 18 U. S. C. § 2252A to add a new pandering and solicitation provision, relevant portions of which now read as follows:
“(a) Any person who—
“(3) knowingly—
“(B) advertises, promotes, presents, distributes, or solicits through the mails, or in interstate or foreign *290 commerce by any means, including by computer, any material or purported material in a manner that reflects the belief, or that is intended to cause another to believe, that the material or purported material is, or contains—
“(1) an obscene visual depiction of a minor engaging in sexually explicit conduct; or
“(ii) a visual depiction of an actual minor engaging in sexually explicit conduct,
“shall be punished as provided in subsection (b).” §2252A(a)(3)(B) (2000 ed., Supp. V).
Section 2256(2)(A) defines “‘sexually explicit conduct’” as
“actual or simulated—
“(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;
“(ii) bestiality;
“(iii) masturbation;
“(iv) sadistic or masochistic abuse; or
“(v) lascivious exhibition of the genitals or pubic area of any person.”
Violation of § 2252A(a)(3)(B) incurs a minimum sentence of 5 years imprisonment and a maximum of 20 years. 18 U. S. C. § 2252A(b)(l).
The Act’s express findings indicate that Congress was concerned that limiting the child-pornography prohibition to material that could be proved to feature actual children, as our decision in Free Speech Coalition required, would enable many child pornographers to evade conviction. See § 501(9), (10), 117 Stat. 677. The emergence of new technology and the repeated retransmission of picture files over the Internet could make it nearly impossible to prove that a particular image was produced using real children — even though “[t]here is no substantial evidence that any of the child por *291 nography images being trafficked today were made other than by the abuse of real children,” virtual imaging being prohibitively expensive. §501(5), (7), (8), (11), id., at 676-678; see also Dept. of Justice, Office of Community Oriented Policing Services, R. Wortley & S. Smallbone, Child Pornography on the Internet 9 (May 2006), online at http://www. cops.usdoj.gov/mime/open.pdf?Item=1729 (hereinafter Child Pornography on the Internet) (as visited Jan. 7, 2008, and available in Clerk of Court’s case file).
B
The following facts appear in the opinion of the Eleventh Circuit, 444 F. 3d 1286, 1288 (2006). On April 26, 2004, respondent Michael Williams, using a sexually explicit screen name, signed in to a public Internet chat room. A Secret Service agent had also signed in to the chat room under the moniker “Lisa n Miami.” The agent noticed that Williams had posted a message that read: “Dad of toddler has ‘good’ pics of her an [sic] me for swap of your toddler pics, or live cam.” The agent struck up a conversation with Williams, leading to an electronic exchange of nonpornographic pictures of children. (The agent’s picture was in fact a doctored photograph of an adult.) Soon thereafter, Williams messaged that he had photographs of men molesting his 4-year-old daughter. Suspicious that “Lisa n Miami” was a law-enforcement agent, before proceeding further Williams demanded that the agent produce additional pictures. When he did not, Williams posted the following public message in the chat room: “HERE ROOM; I CAN PUT UPLINK CUZ IM FOR REAL — SHE CANT.” Appended to this declaration was a hyperlink that, when clicked, led to seven pictures of actual children, aged approximately 5 to 15, engaging in sexually explicit conduct and displaying their genitals. The Secret Service then obtained a search warrant for Williams’s home, where agents seized two hard *292 drives containing at least 22 images of real children engaged in sexually explicit conduct, some of it sadomasochistic.
Williams was charged with one count of pandering child pornography under § 2252A(a)(3)(B) and one count of possessing child pornography under §2252A(a)(5)(B). He pleaded guilty to both counts but reserved the right to challenge the constitutionality of the pandering conviction. The District Court rejected his challenge, and imposed concurrent 60-month prison terms on the two counts and a statutory assessment of $100 for each count, see 18 U. S. C. § 3013. No. 04-20299-CR-MIDDLEBROOKS (SD Fla., Aug. 20, 2004), App. B to Pet. for Cert. 46a-69a. The United States Court of Appeals for the Eleventh Circuit reversed the pandering conviction, holding that the statute was both over-broad and impermissibly vague. 444 F. 3d, at 1308-1309.
We granted certiorari. 549 U. S. 1304 (2007).
II
A
According to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech. The doctrine seeks to strike a balance between competing social costs. Virginia v. Hicks, 539 U. S. 113, 119-120 (2003). On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech, inhibiting the free exchange of ideas. On the other hand, invalidating a law that in some of its applications is perfectly constitutional — particularly a law directed at conduct so antisocial that it has been made criminal — has obvious harmful effects. In order to maintain an appropriate balance, we have vigorously enforced the requirement that a statute’s overbreadth be substantial, not only in .an absolute sense, but also relative to the statute’s plainly legitimate sweep. See Board of Trustees of State Univ. of N. Y. v. Fox, 492 U. S. 469, 485 *293 (1989); Broadrick v. Oklahoma, 413 U. S. 601, 615 (1973). Invalidation for overbreadth is “ ‘ “strong medicine” ’ ” that is not to be “casually employed.” Los Angeles Police Dept. v. United Reporting Publishing Corp., 528 U. S. 32, 39 (1999) (quoting Ferber, 458 U. S., at 769).
The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers. Generally speaking, § 2252A(a)(3)(B) prohibits offers to provide and requests to obtain child pornography. The statute does not require the actual existence of child pornography. In this respect, it differs from the statutes in Ferber, Osborne, and Free Speech Coalition, which prohibited the possession or distribution of child pornography. Rather than targeting the underlying material, this statute bans the collateral speech that introduces such material into the child-pornography distribution network. Thus, an Internet user who solicits child pornography from an undercover agent violates the statute, even if the officer possesses no child pornography. Likewise, a person who advertises virtual child pornography as depicting actual children also falls within the reach of the statute.
The statute’s definition of the material or purported material that may not be pandered or solicited precisely tracks the material held constitutionally proscribable in Ferber and Miller: obscene material depicting (actual or virtual) children engaged in sexually explicit conduct, and any other material depicting actual children engaged in sexually explicit conduct. See Free Speech Coalition, 535 U. S., at 245-246 (stating that the First Amendment does not protect obscenity or pornography produced with actual children); id., at 256 (holding invalid the challenged provision of the CPPA because it “eover[ed] materials beyond the categories recognized in Ferber and-Miller”).
A number of features of the statute are important to our analysis: <
*294 First, the statute includes a scienter requirement. The first word of § 2252A(a)(3) — “knowingly”—applies to both of the immediately following subdivisions, both the previously existing § 2252A(a)(3)(A)[1] and the new § 2252A(a)(3)(B) at issue here. We think that the best reading of the term in context is that it applies to every element of the two provisions. This is not a case where grammar or structure enables the challenged provision or some of its parts to be read apart from the “knowingly” requirement. Here “knowingly” introduces the challenged provision itself, making clear that it applies to that provision in its entirety; and there is no grammatical barrier to reading it that way.
Second, the statute’s string of operative verbs — “advertises, promotes, presents, distributes, or solicits” — is reasonably read to have a transactional connotation. That is to say, the statute penalizes speech that accompanies or seeks to induce a transfer of child pornography — via reproduction or physical delivery — from one person to another. For three of the verbs, this is obvious: Advertising, distributing, and soliciting are steps taken in the course of an actual or proposed transfer of a product, typically but not exclusively in a commercial market. When taken in isolation, the two remaining verbs — “promotes” and “presents” — are susceptible of multiple and wide-ranging meanings. In context, however, those meanings are narrowed by the commonsense canon of noscitur a sociis — which counsels that a word is given more precise content by the neighboring words with which it is associated. See Jarecki v. G. D. Searle & Co., 367 U. S. 303, 307 (1961); 2A N. Singer & J. Singer, Sutherland Statutes and Statutory Construction §47:16 (7th ed. 2007). “Promotes,” in a list that includes “solicits,” “distributes,” and “advertises,” is most sensibly read to mean the act of recommending purported child pornography to another per *295 son for his acquisition. See American Heritage Dictionary 1408 (4th ed. 2000) (def. 4: “To attempt to sell or popularize by advertising or publicity”). Similarly, “presents,” in the context of the other verbs with which it is associated, means showing or offering the child pornography to another person with a view to his acquisition. See id., at 1388 (def. 3a: “To make a gift or award of”). (The envisioned acquisition, of course, could be an electronic one, for example, reproduction of the image on the recipient’s computer screen.)
To be clear, our conclusion that all the words in this list relate to transactions is not to say that they relate to commercial transactions. One could certainly “distribute” child pornography without expecting payment in return. Indeed, in much Internet file sharing of child pornography each participant makes his files available for free to other participants — as Williams did in this case. “Distribution may involve sophisticated pedophile rings or organized crime groups that operate for profit, but in many cases, is carried out by individual amateurs who seek no financial reward.” Child Pornography on the Internet 9. To run afoul of the statute, the speech need only accompany or seek to induce the transfer of child pornography from one person to another.
Third, the phrase “in a manner that reflects the belief” includes both subjective and objective components. “[A] manner that reflects the belief” is quite different from “a manner that would give one cause to believe.” The first formulation suggests that the defendant must actually have held the subjective “belief” that the material or purported material was child pornography. Thus, a misdescription that leads the listener to believe the defendant is offering child pornography, when the defendant in fact does not believe the material is child pornography, does not violate this prong of the statute. (It may, however, violate the “manner . . . that is intended to cause another to believe” prong if the misdescription is intentional.) There is also an objective *296 component to the phrase “manner that reflects the belief.” The statement or action must objectively manifest a belief that the material is child pornography; a mere belief, without an accompanying statement or action that would lead a reasonable person to understand that the defendant holds that belief, is insufficient.
Fourth, the other key phrase, “in a manner . . . that is intended to cause another to believe,” contains only a subjective element: The defendant must “intend” that the listener believe the material to be child pornography, and must select a manner of “advertising, promoting, presenting, distributing, or soliciting” the material that he thinks will engender that belief — whether or not a reasonable person would think the same. (Of course in the ordinary case the proof of the defendant’s intent will be the fact that, as an objective matter, the manner of “advertising, promoting, presenting, distributing, or soliciting” plainly sought to convey, that the material was child pornography.)
Fifth, the definition of “sexually explicit conduct” (the visual depiction of which, engaged in by an actual minor, is covered by the Act’s pandering and soliciting prohibition even when it is not obscene) is very similar to the definition of “sexual conduct” in the New York statute we upheld against an overbreadth challenge in Ferber. That defined “sexual conduct” as “ ‘actual or simülated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, sadomasochistic abuse, or lewd exhibition of the genitals.’ ” 458 U. S., at 751. Congress used essentially the same constitutionally approved definition in the present Act. If anything, the fact that the defined term here is “sexually explicit conduct,” rather than (as in Ferber) merely “sexual conduct,” renders the definition more immune from facial constitutional attack. “[Simulated sexual intercourse” (a phrase found in the Ferber definition as well) is even less susceptible here of application to the sorts of sex scenes found in R-rated movies — which suggest that intercourse is taking place with *297 out explicitly depicting it, and without causing viewers to believe that the actors are actually engaging in intercourse. “Sexually explicit conduct” connotes actual depiction of the sex act rather than merely the suggestion that it is occurring. And “simulated” sexual intercourse is not sexual intercourse that is merely suggested, but rather sexual intercourse that is explicitly portrayed, even though (through camera tricks or otherwise) it may not actually have occurred. The portrayal must cause a reasonable viewer to believe that the actors actually engaged in that conduct on camera. Critically, unlike in Free Speech Coalition, § 2252A(a)(3)(B)(ii)’s requirement of a “visual depiction of an actual minor” makes clear that, although the sexual intercourse may be simulated, it must involve actual children (unless it is obscene). This change eliminates any possibility that virtual child pornography or sex between youthful-looking adult actors might be covered by the term “simulated sexual intercourse.”
B
We now turn to whether the statute, as we have construed it, criminalizes a substantial amount of protected expressive activity.
Offers to engage in illegal transactions are categorically excluded from First Amendment protection. Pittsburgh Press Co. v. Pittsburgh Comm’n on Human Relations, 413 U. S. 376, 388 (1973); Giboney v. Empire Storage & Ice Co., 336 U. S. 490, 498 (1949). One would think that this principle resolves the present case, since the statute criminalizes only offers to provide or requests to obtain contraband— child obscenity and child pornography involving actual children, both of which are proscribed, see 18 U. S. C. § 1466A(a), § 2252A(a)(5)(B) (2000 ed., Supp. V), and the proscription of which is constitutional, see Free Speech Coalition, 535 U. S., at 245-246, 256. The Eleventh Circuit, however, believed that the exclusion of First Amendment protection extended only to commercial offers to provide or receive contraband: *298 “Because [the statute] is not limited to commercial speech but extends also to non-commercial promotion, presentation, distribution, and solicitation, we must subject the content-based restriction of the PROTECT Act pandering provision to strict scrutiny ...444 F. 3d, at 1298.
This mistakes the rationale for the categorical exclusion. It is based not on the less privileged First Amendment status of commercial speech, see Central Hudson Gas & Elec. Corp. v. Public Serv. Comm’n of N. Y, 447 U. S. 557, 562-563 (1980), but on the principle that offers to give or receive what it is unlawful to possess have no social value and thus, like obscenity, enjoy no First Amendment protection, see Pittsburgh Press, supra, at 387-389.[2] Many long established criminal proscriptions — such as laws against conspiracy, incitement, and solicitation — criminalize speech (commercial or not) that is intended to induce or commence illegal activities. See, e. g., ALI, Model Penal Code § 5.02(1) (1985) (solicitation to commit a crime); §5.03(l)(a) (conspiracy to commit a crime). Offers to provide or requests to obtain unlawful material, whether as part of a commercial exchange or not, are similarly undeserving of First Amendment protection. It would be an odd constitutional principle that permitted the government to prohibit offers to sell illegal drugs, but not offers to give them away for free.
To be sure, there remains an important distinction between a proposal to engage in illegal activity and the ab *299 stract advocacy of illegality. See Brandenburg v. Ohio, 395 U. S. 444, 447-448 (1969) (per curiam); see also NAACP v. Claiborne Hardware Co., 458 U. S. 886,928-929 (1982). The Act before us does not prohibit advocacy of child pornography, but only offers to provide or requests to obtain it. There is no doubt that this prohibition falls well within constitutional bounds. The constitutional defect we found in the pandering provision at issue in Free Speech Coalition was that it went beyond pandering to prohibit possession of material that could not otherwise be proscribed. 535 U. S., at 258.
In sum, we hold that offers to provide or requests to obtain child pornography are categorically excluded from the First Amendment. Since the Eleventh Circuit erroneously concluded otherwise, it applied strict scrutiny to §2252A(a) (3)(B), lodging three fatal objections. We address these objections because they could be recast as arguments that Congress has gone beyond the categorical exception.
The Eleventh Circuit believed it a constitutional difficulty that no child pornography need exist to trigger the statute. In its view, the fact that the statute could punish a “braggart, exaggerator, or outright liar” rendered it unconstitutional. 444 F. 3d, at 1298. That seems to us a strange constitutional calculus. Although we have held that the government can ban both fraudulent offers, see, e. g., Illinois ex rel. Madigan v. Telemarketing Associates, Inc., 538 U. S. 600, 611-612 (2003), and offers to provide illegal products, the Eleventh Circuit would forbid the government from punishing fraudulent offers to provide illegal products. We see no logic in that position; if anything, such statements are doubly excluded from the First Amendment.
The Eleventh Circuit held that under Brandenburg, the “non-commercial, non-inciteful promotion of illegal child pornography” is protected, and § 2252A(a)(3)(B) therefore overreaches by criminalizing the promotion of child pornography. 444 F. 3d, at 1298. As we have discussed earlier, however, *300 the term “promotes” does not refer to abstract advocacy, such as the statement “I believe that child pornography should be legal” or even “I encourage you to obtain child pornography.” It refers to the recommendation of a particular piece of purported child pornography with the intent of initiating a transfer.
The Eleventh Circuit found “particularly objectionable” the fact that the “reflects the belief” prong of the statute could ensnare a person who mistakenly believes that material is child pornography. Ibid. This objection has two conceptually distinct parts. First, the Eleventh Circuit thought that it would be unconstitutional to punish someone for mistakenly distributing virtual child pornography as real child pornography. We disagree. Offers to deal in illegal products or otherwise engage in illegal activity do not acquire First Amendment protection when the offeror is mistaken about the factual predicate of his offer. The pandering and solicitation made unlawful by the Act are sorts of inchoate crimes — acts looking toward the commission of another crime, the delivery of child pornography. As with other inchoate crimes — attempt and conspiracy, for example — impossibility of completing the crime because the facts were not as the defendant believed is not a defense. “All courts are in agreement that what is usually referred to as ‘factual impossibility’ is no defense to a charge of attempt.” 2 W. LaFave, Substantive Criminal Law § 11.5(a)(2) (2d ed. 2003). (The author gives as an example “the intended sale of an illegal drug [that] actually involved a different substance.” Ibid.) See also United States v. Hamrick, 43 F. 3d 877, 885 (CA4 1995) (en banc) (holding that impossibility is no defense to attempt and citing the holdings of four other Circuits); ALI, Model Penal Code §5.01, Comment, p. 307 (in attempt prosecutions “the defendant’s conduct should be measured according to the circumstances as he believes them to be, rather than the circumstances as they may have existed in fact”).
*301 Under this heading the Eleventh Circuit also thought that the statute could apply to someone who subjectively believes that an innocuous picture of a child is “lascivious.” (Clause (v) of the definition of “sexually explicit conduct” is “lascivious exhibition of the genitals or pubic area of any person.” §2256(2)(A) (2000 ed., Supp. V).) That is not so. The defendant must believe that the picture contains certain material, and that material in fact (and not merely in his estimation) must meet the statutory definition. Where the material at issue is a harmless picture of a child in a bathtub and the defendant, knowing that material, erroneously believes that it constitutes a “lascivious exhibition of the genitals,” the statute has no application.
Williams and amici raise other objections, which demonstrate nothing so forcefully as the tendency of our over-breadth doctrine to summon forth an endless stream of fanciful hypotheticals. Williams argues, for example, that a person who offers nonpornographic photographs of young girls to a pedophile could be punished under the statute if the pedophile secretly expects that the pictures will contain child pornography. Brief for Respondent 19-20. That hypothetical does not implicate the statute, because the offeror does not hold the belief or intend the recipient to believe that the material is child pornography.
Amici contend that some advertisements for mainstream Hollywood movies that depict underage characters having sex violate the statute. Brief for Free Speech Coalition et al. as Amici Curiae 9-18. We think it implausible that a reputable distributor of Hollywood movies, such as Amazon, com, believes that one of these films contains actual children engaging in actual or simulated sex on camera; and even more implausible that Amazon.com would intend to make its customers believe such a thing. The average person understands that sex scenes in mainstream movies use nonchild actors, depict sexual activity in a way that would not rise to *302 the explicit level necessary under the statute, or, in most cases, both.
There was raised at oral argument the question whether turning child pornography over to the police might not count as “present[ing]” the material. See Tr. of Oral Arg. 9-11. An interpretation of “presents” that would include turning material over to the authorities would of course be self-defeating in a statute that looks to the prosecution of people who deal in child pornography. And it would effectively nullify § 2252A(d), which provides an affirmative defense to the possession ban if a defendant promptly delivers child pornography to a law-enforcement agency. (The possession offense would simply be replaced by a pandering offense for delivering the material to law-enforcement officers.) In any event, the verb “present” — along with “distribute” and “advertise,” as well as “give,” “lend,” “deliver,” and “transfer” — was used in the definition of “promote” in Ferber. See 458 U. S., at 751 (quoting N. Y. Penal Law Ann. §263.15 (McKinney 1980)). Despite that inclusion, we had no difficulty concluding that the New York statute survived facial challenge. And in the period since Ferber, despite similar statutory definitions in other state statutes, see, e. g., Alaska Stat. § 11.61.125(d) (2006), Del. Code Ann., Tit. 11, §1109(5) (2007), we are aware of no prosecution for giving child pornography to the police. We can hardly say, therefore, that there is a “realistic danger” that § 2252A(a)(3)(B) will deter such activity. New York State Club Assn., Inc. v. City of New York, 487 U. S. 1, 11 (1988) (citing Thornhill v. Alabama, 310 U. S. 88, 97-98 (1940)).
It was also suggested at oral argument that the statute might cover documentary footage of atrocities being committed in foreign countries, such as soldiers raping young children. See Tr. of Oral Arg. 5-7. Perhaps so, if the material rises to the high level of explicitness that we have held is required. That sort of documentary footage could of course be the subject of an as-applied challenge. The courts *303 presumably would weigh the educational interest in the dissemination of information about the atrocities against the government’s interest in preventing the distribution of materials that constitute “a permanent record” of the children’s degradation whose dissemination increases “the harm to the child.” Ferber, supra, at 759. Assuming that the constitutional balance would have to be struck in favor of the documentary, the existence of that exception would not establish that the statute is substantially overbroad. The “mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.” Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U. S. 789, 800 (1984). In the vast majority of its applications, this statute raises no constitutional problems whatever.
Finally, the dissent accuses us of silently overruling our prior decisions in Ferber and Free Speech Coalition. See post, at 320 (opinion of Souter, J.). According to the dissent, Congress has made an end run around the First Amendment’s protection of virtual child pornography by prohibiting proposals to transact in such images rather than prohibiting the images themselves. But an offer to provide or request to receive virtual child pornography is not prohibited by the statute. A crime is committed only when the speaker believes or intends the listener to believe that the subject of the proposed transaction depicts real children. It is simply not true that this means “a protected category of expression [will] inevitably be suppressed,” post, at 321. Simulated child pornography will be as available as ever, so long as it is offered and sought as such, and not as real child pornography. The dissent would require an exception from the statute’s prohibition when, unbeknownst to one or both of the parties to the proposal, the completed transaction would not have been unlawful because it is (we have said) protected by the First Amendment. We fail to see what First Amendment interest would be served by drawing a *304 distinction between two defendants who attempt to acquire contraband, one of whom happens to be mistaken about the contraband nature of what he would acquire. Is Congress prohibited from punishing those who attempt to acquire what they believe to be national-security documents, but which are actually fakes? To ask is to answer. There is no First Amendment exception from the general principle of criminal law that a person attempting to commit a crime need not be exonerated because he has a mistaken view of the facts.
Ill
As an alternative ground for facial invalidation, the Eleventh Circuit held that § 2252A(a)(3)(B) is void for vagueness. Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment. A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement. Hill v. Colorado, 530 U. S. 703, 732 (2000); see also Grayned v. City of Rockford, 408 U. S. 104, 108-109 (1972). Although ordinarily “[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others,” we have relaxed that requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech. Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U. S. 489, 494-495, and nn. 6 and 7 (1982); see also Reno v. American Civil Liberties Union, 521 U. S. 844, 870-874 (1997). But “perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity.” Ward v. Rock Against Racism, 491 U. S. 781, 794 (1989).
The Eleventh Circuit believed that the phrases “ ‘in a manner that reflects the belief’” and “‘in a manner . . . that *305 is intended to cause another to believe’ ” are “so vague and standardless as to what may not be said that the public is left with no objective measure to which behavior can be conformed.” 444 F. 3d, at 1306. The court gave two examples. First, an e-mail claiming to contain photograph attachments and including a message that says “ ‘little Janie in the bath— hubba, hubba!’ ” Ibid. According to the Eleventh Circuit, given that the statute does not require the actual existence of illegal material, the Government would have “virtually unbounded discretion” to deem such a statement in violation of the “ ‘reflects the belief’ ” prong. Ibid. The court’s second example was an e-mail entitled “ ‘Good pics of kids in bed’ ” with a photograph attachment of toddlers in pajamas asleep in their beds. Ibid. The court described three hypothetical senders: a proud grandparent, a “chronic forwarder of cute photos with racy tongue-in-cheek subject lines,” and a child molester who seeks to trade the photographs for more graphic material. Id., at 1306-1307. According to the Eleventh Circuit, because the “manner” in which the photographs are sent is the same in each case, and because the identity of the sender and the content of the photographs are irrelevant under the statute, all three senders could arguably be prosecuted for pandering. Id., at 1307.
We think that neither of these hypotheticals, without further facts, would enable a reasonable juror to find, beyond a reasonable doubt, that the speaker believed and spoke in a manner that reflected the belief, or spoke in a manner intended to cause another to believe, that the pictures displayed actual children engaged in “sexually explicit conduct” as defined in the Act. The prosecutions would be thrown out at the threshold.
But the Eleventh Circuit’s error is more fundamental than merely its selection of unproblematic hypotheticals. Its basic mistake lies in the belief that the mere fact that close cases can be envisioned renders a statute vague. That is not *306 so. Close cases can be imagined under virtually any statute. The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt. See In re Winship, 397 U. S. 358, 363 (1970).
What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is. Thus, we have struck down statutes that tied criminal culpability to whether the defendant’s conduct was “annoying” or “indecent” — wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings. See Coates v. Cincinnati, 402 U. S. 611, 614 (1971); Reno, supra, at 870-871, and n. 35.
There is no such indeterminacy here. The statute requires that the defendant hold, and make a statement that reflects, the belief that the material is child pornography; or that he communicate in a manner intended to cause another so to believe. Those are clear questions of fact. Whether someone held a belief or had an intent is a true-or-false determination, not a subjective judgment such as whether conduct is “annoying” or “indecent.” Similarly true or false is the determination whether a particular formulation reflects a belief that material or purported material is child pornography. To be sure, it may be difficult in some cases to determine whether these clear requirements have been met. “But courts and juries every day pass upon knowledge, belief and intent — the state of men’s minds — having before them no more than evidence of their words and conduct, from which, in ordinary human experience, mental condition may be inferred.” American Communications Assn. v. Douds, 339 U. S. 382, 411 (1950) (citing 2 J. Wigmore, Evidence §§244, 256 et seq. (3d ed. 1940)). And they similarly pass every day upon the reasonable import of a defendant’s statements — whether, for example, they fairly convey a false rep *307 resentation, see, e. g., 18 U. S. C. § 1621 (criminalizing perjury), or a threat of physical injury, see, e.g., § 115(a)(1) (criminalizing threats to assault federal officials). Thus, the Eleventh Circuit’s contention that § 2252A(a)(3)(B) gives law-enforcement officials “virtually unfettered discretion” has no merit. No more here than in the case of laws against fraud, conspiracy, or solicitation.
Child pornography harms and debases the most defenseless of our citizens. Both the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet. This Court held unconstitutional Congress’s previous attempt to meet this new threat, and Congress responded with a carefully crafted attempt to eliminate the First Amendment problems we identified. As far as the provision at issue in this case is concerned, that effort was successful.
The judgment of the Eleventh Circuit is reversed.

It is so ordered.

 Section 2252A(a)(3)(A) (2000 ed., Supp. V) reads: “reproduces any child pornography for distribution through the mails, or in interstate or foreign commerce by any means, including by computer.”

 In Pittsburgh Press, the newspaper argued that we should afford that category of commercial speech which consists of help-wanted ads the same level of First Amendment protection as noncommercial speech, because of its important information-exchange function. We replied: “Whatever the merits of this contention may be in other contexts, it is unpersuasive in this case. Discrimination in employment is not only commercial activity, it is illegal commercial activity .... We have no doubt that a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes.” 413 U. S., at 388. The import of this response is that noncommercial proposals to engage in illegal activity have no greater protection than commercial proposals to do so.