W. FLETCHER, Circuit Judge,
concurring in the judgment:
I strongly but respectfully disagree with the rationale advanced by the per curiam opinion and by the principal concurrence. I concur only in the judgment.
The issue before us is the meaning of the federal obstruction of justice statute, 18 U.S.C. § 1503(a). Section 1503(a) provides, in relevant part:
Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States ... or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b).
(Emphasis added.) Section 1503(a) applies to obstruction of justice, as defined by the statute, in both criminal and civil proceedings. Section 1503(b) provides punishments of varying severities, depending on the nature of the act. The most lenient punishment is “imprisonment for not more than 10 years, a fine under this title, or both.” Id. § 1503(b)(3).
Bonds was prosecuted under the second, or “omnibus,” clause of § 1503(a), the emphasized portion above. The government and the principal concurrence read the word “corruptly” at the beginning of the clause to refer to a state of mind, meaning “with intent to influence, intimidate, or impede the due administration of justice.” They read the clause as criminalizing even entirely truthful statements, so long as those statements are made with such intent.
In the government’s view, any truthful answer given in the course of civil or criminal litigation, if intended to influence, obstruct, or impede the administration of justice, violates the omnibus clause. At oral argument, the government made terrifyingly clear the result of its reading of the statute. The government contended that the obstruction statute criminalizes a truthful but intentionally evasive or misleading answer to an interrogatory in civil litigation. The government also contended that the statute criminalizes a truthful but intentionally evasive or misleading answer during appellate oral argument:
Q: I think it’s a common experience among all of us on the appellate court to ask of the lawyer in front of us in a criminal case that’s come up on appeal: “Counsel, could you please explain to me what happened at trial?” and for the lawyer arguing from the U.S. Attorney’s Office to say, “Your Honor, I was not the trial attorney.” Now, sometimes that’s an evasive answer. They may well know the answer, but it’s true that they weren’t the trial attorney____ Has the lawyer just committed a crime? ... [T]he answer that I just hypothesized was . designed , to put me off the track.... A truthful but evasive answer.
*595 A: I think that would be obstructive, Your Honor.
When asked how many San Francisco lawyers it planned to throw in jail, the government declined to specify.
The principal concurrence agrees with the government’s reading of the statute. But it seeks to limit the scope of its operation, writing, “Because the statute sweeps so broadly, due process calls for prudential limitations on the. government’s power to prosecute under it.” Concurrence at 585. According to the concurrence, “due process” and “prudence” dictate that a truthful but intentionally evasive or misleading statement can be prosecuted under the statute only if it was “material.” Id. at 585. The concurrence defines “material” as “capable of influencing a decisionmaking person or entity.” Id. at 585.
Applying its prudence-based definition of materiality, the principal concurrence tells us that Bonds’s wandering and non-responsive answer was not material and therefore not criminal, even if given with intent to influence, obstruct, or impede. It concludes, “Statement C, standing alone, did not have the capacity to divert the government from its investigation or influence the grand jury’s decision whether to indict anyone.” Id. at 585. The concurrence contrasts Bonds’s answer with an answer that would have been criminal. Bonds was asked, “Did Greg ever .give you anything that required a syringe to'inject yourself with?” If Bonds had answered “I’m afraid of needles,” the concurrence tells us that he could have been successfully prosecuted. Id. If Bonds had given that answer, “it would have been plausible to infer an unspoken denial, with the actual words serving as an explanation or elaboration.” Id.
The principal concurrence’s “prudential” narrowing of “the government’s power to prosecute” is hardly reassuring. An attorney who provides a truthful but evasive answer to an interrogatory in civil litigation often does so in the hope that his answer will “influence the decisionmaking person” who receives it. If there is a' reasonable chance that the hope will be realized, the attorney is a criminal. An appellate attorney who answers during oral argument, “I was not the trial attorney,” sometimes knows what happened at trial but gives that answer in the hope that the judge will not pursue the matter. This attorney, too, may be a criminal.
I disagree. The omnibus clause of § 1503(a) is not an open-ended provision whose constitutionality we can uphold only by manufacturing a “prudential” limitation on the government’s power to prosecute. Rather, it is a narrowly targeted provision that had a specific meaning when enacted and whose text has remained substantially unchanged for over 180 years. The key to a proper understanding of the statute is the meaning of the word “corruptly.”
I. Meaning of “Corruptly”
As used in § 1503(a), “corruptly” does not describe a state of mind. Rather, it describes a forbidden means of influencing, obstructing, or impeding the due administration of justice. As used in § 1503(a), “corruptly” most likely means “by bribery.” There are two arguments supporting this reading: first, the text of the statute; second, a comparison with 18 U.S.C. § 1621, the federal perjury statute.
A. Text of the Statute
The predecessor to § 1503(a) was enacted in 1831, in reaction to perceived'Overreaching by a federal judge who had held a lawyer in contempt for an out-of-court writing. See Walter Nelles & Carol Weiss *596 King, Contempt by Publication in the United States: To the Federal Contempt Statute, 28 Colum. L.Rev. 401, 423-31 (1928). The 1831 statute had two parts. The first described, and set limits on, the contempt power of federal judges. The second, at issue in this case, criminalized out-of-court conduct that improperly sought to influence judicial proceedings. Section 1503(a) is the successor to the second part.
The 1831 statute read, in relevant part: And be it further enacted, That if any person or persons shall, corruptly, or by threats or force, endeavor to influence, intimidate, or impede any juror, witness, or officer, in any court of the United States, in the discharge of his duty, or shall corruptly, or by threats or force, obstruct or impede, or endeavor to obstruct or impede, the due administration of justice therein, every person or persons, so offending, shall be liable to prosecution therefor....
Act of Mar. 2, 1831, ch. 99, 4 Stat. 487, 488 (emphasis added). For convenience, I quote again the .corresponding provisions of the modern § 1503(a):
Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, ... in the discharge of his duty ... or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished as provided in subsection (b).
18 U.S.C. § 1503(a) (emphasis added). The omnibus clause, highlighted above, is at issue here.
There are three differences between the omnibus clause as originally enacted in 1831 and as it appears today. First, in 1872, Congress enacted a provision that prohibited obstruction “by threatening letters, or any threatening communications,” in addition to the 1831 prohibitions on obstruction “corruptly” and “by threats or force.” Act of June 10, 1872, ch. 420, 17 Stat. 378, 378. As part of the general revision and codification of the federal criminal code in 1909, Congress simplified the statute by replacing “any threatening letters, or any threatening communications,” with “any threatening letter or communication.” Act of Mar. 4, 1909, ch. 321, 35 Stat. 1088, 1113. Second, the 1831 law prohibited obstructing or impeding the administration of justice. The 1872 statute added-a prohibition against influencing its administration. Act of June 10, 1872, ch. 420, 17 Stat. 378, 378. Third, as part of the 1909 revision, the comma after “corruptly” was dropped, almost certainly inadvertently. Act of Mar. 4, 1909, ch. 321, 35 Stat. 1088, 1113. There had been a comma after the word “corruptly” in both the first and omnibus clauses in the 1831 and 1872 statutes, and a comma was retained after “corruptly” in the first clause of the obstruction statute. See Act of Mar. 2, 1831, ch. 99, 4 Stat. 487, 488; Act of June 10, 1872, ch. 420, 17 Stat. 378, 378; Act of Mar. 4, 1909, ch. 321, 35 Stat. 1088, 1113. No reason was given in 1909 for dropping the comma after the word “corruptly” in the second, omnibus clause.
As written in 1831, the omnibus clause provided two methods, separated by commas, by which a person could improperly “obstruct or impede” the “due administration of justice.” A person could do it “corruptly,” or he could do it “by threats or force.” As written in 1872, the clause provided three such methods, again separated by commas, by which a person could improperly “influence, obstruct, or impede” the “due administration of justice.” *597 A person could do it “corruptly,” “by threats or force,” or “by threatening letters, or any threatening communications.” Finally, as revised and codified in 1909, the clause continued to provide three means, now partially separated by commas, by which a person could “influence, obstruct, or impede”: a person could do it “corruptly,” “by threats or force,” or “by threatening letter or communication.” The omnibus clause has remained essentially unchanged since the 1909 general revision and codification.
A “commonsensical interpretive principle” is that “words mean what they conveyed to reasonable people at the time they were written.” Antonin Scalia & Bryan Garner, Reading Law: The Interpretation of Legal Text 15-16 (2012). The 1828 American Dictionary of the English Language, published three years before the enactment of the original version of § 1503(a), gave two definitions for corruptly:
1. In a corrupt manner; with corruption; viciously; wickedly; without integrity. We have dealt very corruptly against thee. Nehemiah 1.
2. By bribery. A judgment was obtained corruptly.
A contemporaneous document, as well as an interpretive canon, show that when it wrote the word “corruptly,” Congress was likely using the narrow and specific second definition.
The National Intelligencer, publisher of the Register of Debates and the predecessor to what later became the Congressional Record, reported an action of the House of Representatives on the Senate Bill that became the 1831 statute. It reported that on Wednesday, March 2, 1831, the House amended and then agreed to the Senate Bill punishing “attempts to corrupt or intimidate jurors”:
The Senate’s amendments to the Act declaratory of the powers of the Courts of the United States on the subject of Contempts; adding a second section for punishing all attempts to corrupt or im timidate jurors, & c. was amended on the suggestion of Mr. BUCHANAN, and then agreed to.
Twenty-First Congress, Second Session, Daily National Intelligencer, Mar. 3, 1831 (emphasis added). The reference is to the first clause rather than the omnibus clause of the statute, but there is no reason to believe that “corruptly” had different meanings in the two parallel clauses. The National Intelligencer’s use of the infinitive, “to corrupt,” in connection with the direct object, “jurors,” indicates that the prohibition against acting “corruptly” was a prohibition against a specific act — corrupting, or attempting to corrupt, jurors, and thereby obstructing or impeding justice. That is, the prohibition against acting “corruptly” was a narrow and specific prohibition against bribing jurors, using the second definition. It was not a broad general prohibition against acting “wickedly” or “viciously” in obstructing or impeding justice.
The text following the word “corruptly” in the omnibus clause of § 1503(a) reinforces the conclusion that it means “by bribery.” In the current version, there are three specific forbidden methods of “influencing, obstructing, or impeding the due administration of justice”: (1) “corruptly,” (2) “by threats or force,” or (3) “by any threatening letter or communication.” In the 1831 version, there were two specific forbidden methods: (1) “corruptly,” or (2) “by threats or force.” Where statutory terms “are susceptible of multiple and wide-ranging meanings ... those meanings are narrowed by the commonsense canon of noscitur a sociis — which counsels that a word is given more precise content by the neighboring words with which it is *598 associated.” United States v. Williams, 553 U.S. 285, 294, 128 S.Ct. 1830, 170 L.Ed.2d 650 (2008). “The maxim noscitur a sociis, ... while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress.” Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961); see also United States v. Kimsey, 668 F.3d 691, 701 (9th Cir.2012) (even when an interpretation is conceivable “based on etymology alone,” that definition is “severely undermined” when it is illogical in light of the neighboring statutory terms).
The text of the omnibus clause of § 1503(a) is precisely the kind of text to which the canon applies. Several methods of obstructing the administration of justice are listed immediately following the word “corruptly”: “by threats,” by “force,” “by threatening letter,” and by threatening “communication.” These are not states of mind. They are specific methods of obstructing justice. We can read “corruptly” as describing a state of mind. Or we can read it as describing another specific method of “influencing, obstructing, or impeding” the “due ádministration of justice.” The canon of noscitur a sociis, as well as common sense, instruct us to choose the latter.
Read in light of a contemporaneous dictionary meaning of “corruptly,” in light of the contemporaneous report on the bill that became the predecessor to § 1503(a), and in light of the noscitur a sociis canon, I conclude that § 1503(a) forbids individuals from obstructing the administration of justice (1) by bribery, (2) by threats or force, or (3) by any threatening letter or communication.
B. Comparison to Perjury
. A comparison of the federal obstruction of justice statute with the federal perjury statute reinforces the conclusion that “corruptly” means “by bribery.” The obstruction of justice statute prescribes different ranges of punishment depending on the act. The most lenient is “imprisonment for not more than 10 years, a fine under this title, or both.” 18 U.S.C. § 1503(b)(3). The federal perjury statute, by contrast, prescribes only one .range of punishment. It provides that someone found guilty of perjury “shall ... be fined under this title or imprisoned not more than five years, or both.” 18 U.S.C. § 1621.
If we accept the principal concurrence’s reading of the word “corruptly,” a person who makes a material truthful statement with the intent to “influence, obstruct, or impede the due administration of justice” may be punished by a term of imprisonment of up to ten years. A person who makes a material untruthful statement with the same intent may be punished by a term of imprisonment of up to only half that. It makes - no sense for Congress to punish a truthful statement more severely than a lie. If, on the other hand, we accept that “corruptly” means “by bribery” in § 1503(a), the disparity in punishment makes perfect sense.
In Bronston v. United States, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), the Court explained the difference between truthful but misleading statements, on the one hand, and perjurious statements, on the other. The Court faced a question related to the question now before us: “whether a witness may be convicted of perjury for an answer, under oath, that is literally true but not responsive to the question asked and arguably misleading by negative implication.” Id. at 352-53, 93 S.Ct. 595.
The government had charged Bronston with violating § 1621, the federal perjury statute, based on statements he had made *599 at a hearing before a bankruptcy referee. When asked whether he had ever had any bank accounts in Swiss banks, Bronston replied that his “company had an account there for about six months, in Zurich.” Id. at 354, 93 S.Ct. 595. Bronston did not mention that he had previously had a personal bank account in Geneva. Id. Bronston’s answer was true. His company had indeed had an account in Zurich. However, his answer, while true, was designed to mislead the questioner. The United States successfully prosecuted Bronston for perjury on the theory that he had testified under oath “with literal truthfulness but unresponsively.” Id. at 355, 93 S.Ct. 595. The Court reversed Bronston’s conviction because “the federal perjury statute cannot be construed to sustain a conviction based on [his] answer.” Id. at 357, 93 S.Ct. 595.
The Court explained, “[W]e perceive no reason why Congress would intend the drastic sanction of a perjury prosecution to cure a testimonial mishap that could readily have been reached with a single additional question by counsel alert — as every examiner ought to be — to the incongruity of [Bronston]’s unresponsive answer.” Id. at 358, 93 S.Ct. 595. “If a witness evades, it is the lawyer’s responsibility to recognize the evasion and to bring the witness back to the mark, to flush out the whole truth with the tools of adversary examination.” Id. at 358-59, 93 S.Ct. 595. This is so even when a witness’s answers were “not guileless but were shrewdly calculated to evade.” Id. at 362, 93 S.Ct. 595.
The Court rejected the very argument that the government makes in the case now before us:
It is no answer to say that here the jury found that [the witness] intended to mislead his examiner. A jury should not be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face, was'intended to mislead'or divert the examiner; the state of mind of the witness is relevant only to the extent that it bears on whether “he does not believe (his answer) to be true.” To hold otherwise would be to inject a new and confusing element into the adversary testimonial system we know. Witnesses would be unsure of the extent of their responsibility for the misunderstandings and inadequacies of examiners,, and might well fear having that responsibility tested by a jury under the vague rubric of “intent to mislead” or “perjury by implication.” The seminal modern treatment of the history of the offense concludes that one consideration of policy overshadowed all others during the years when perjury first emerged as a common-law offense: “that the measures taken against the offense must not be so severe as to discourage witnesses from appearing or testifying.”
Id. at 359, 93 S.Ct. 595 (citation omitted). Simply put, “any special problems arising from the literally true but unresponsive answer are to be remedied through the ‘questioner’s acuity’ and not by a federal perjury prosecution.” Id. at 362, 93 S.Ct. 595.
The government and the principal concurrence brush Bronston aside. That is not so easily done, for the Court’s reasoning is as applicable to this case as to Bronston’s. In either case, “[a] jury should not be permitted to engage in conjecture whether an unresponsive answer, true and complete on its face, was intended to mislead or divert the examiner.” Id. at 358, 93 S.Ct. 595. “To hold otherwise would be to inject a new and confusing element into the adversary testimonial system we know.” Id. Further, and perhaps more important, if the concurrence is right about the meaning of “corruptly” in *600 § 1503(a), the Court’s careful parsing of the perjury statute in Bronston was wasted effort. If the concurrence is right, a prosecutor seeking to convict someone who may or may not have testified truthfully will never need to pursue a perjury conviction. The prosecutor can get an obstruction of justice conviction, carrying twice the penalty, for half the effort.
II. United States v. Aguilar
Supreme Court dictum describing § 1503(a) does not change my conclusion. In United States v. Aguilar, 515 U.S. 593, 115 S.Ct. 2357, 132 L.Ed.2d 520 (1995), the Court reversed a conviction of U.S. District Judge Robert Aguilar for obstruction of justice in violation of the omnibus clause of § 1503(a). A grand jury had been investigating a conspiracy to influence another district judge. One of the suspected conspirators, Abe Chapman, was a distant relation of Aguilar. When Aguilar learned that Chapman had been named in a federal wiretap authorization, Aguilar warned him. During a subsequent grand jury investigation, FBI agents questioned Aguilar about his knowledge of the wiretap and the underlying conspiracy. Aguilar falsely stated that he did not know about either. His false statements provided the basis for his conviction under the omnibus clause.
The Supreme Court reversed the conviction because “[t]he action taken by the accused must be with an intent to influence judicial or grand jury proceedings; it is not enough that there be an intent to influence some ancillary proceeding, such as an investigation independent of the court’s or grand jury’s authority.” Id. at 599, 115 S.Ct. 2357. “In other words, the endeavor must have the natural and probable effect of interfering with the due administration of justice.” Id. (quotation marks omitted).
In dictum, the Court distinguished false statements made to an FBI agent from statements made directly to a grand jury. The Court assumed that such statements made to the grand jury would be covered by the omnibus clause. It wrote that Aguilar’s conduct “falls on the other side of the statutory line from that of one who delivers false documents or testimony to the grand jury itself. Conduct of the latter sort all but assures that the grand jury will consider the material in its deliberations.” Id. at 601, 115 S.Ct. 2357.
If I were compelled to treat the Court’s dictum as a controlling statement of law, I would not be able to argue, consistent with the view of the Supreme Court, that the word “corruptly” in § 1503(a) means “by bribery.” But I do not believe I am so compelled. “We do not treat considered dicta from the Supreme Court lightly,” because “it serves as a prophecy of what that Court might hold.” McCalla v. Royal MacCabees Life Ins. Co., 369 F.3d 1128, 1132 (9th Cir.2004) (quotation marks and citations omitted). But the Court has instructed that while “dictum ‘may be followed if sufficiently persuasive,’ it ‘ought not to control the judgment in a subsequent suit.’ ” United States v. Montero-Camargo, 208 F.3d 1122, 1132 n. 17 (9th Cir.2000) (en banc) (quoting Humphrey’s Executor v. United States, 295 U.S. 602, 627, 55 S.Ct. 869, 79 L.Ed. 1611 (1935)).
I do not believe the Court’s dictum in Aguilar was “considered” in the requisite sense. The question whether false statements made directly to the grand jury violate the omnibus clause was not before the Court. In his opposition to certiorari, Aguilar had conceded that, “as the government notes, the courts have routinely applied Section 1503 to false testimony to the grand jury.” Brief in Opposition at 18-19, Aguilar, 515 U.S. 593, 115 S.Ct. 2357, 132 L.Ed.2d 520 (No. 94-270). The govern *601 ment highlighted that concession in its merits brief. Brief of Petitioner at 20, Aguilar, 515 U.S. 593, 115 S.Ct. 2357, 132 L.Ed.2d 520 (No. 94-270) (“as respondent has conceded, ‘the courts have routinely-applied Section 1503 to false testimony to the grand jury.’ ”). In the context of his suit, Aguilar’s concession makes sense, for it enabled him to focus his argument more narrowly, and to argue that even if the omnibus clause covered false statements made to a grand jury, his false statements to an FBI agent were not covered. The Court accepted without challenge the strategic concession that false statements to the grand jury were covered, and held that, even so, Aguilar’s conduct fell outside the omnibus clause. The Court was thus not asked to consider the question whether false statements were covered by the omnibus clause because that question had been taken off the table. The question presented in the case now before us— whether truthful but evasive statements are covered by the omnibus clause — was so remote from the contemplation of the parties that there had been no need even to take it off the table. . .
No argument was made to the Court in Aguilar about the meaning of “corruptly” in 1831, when the obstruction of justice statute was enacted. Nor was any argument made to the Court about the disparity in sentencing between the perjury statute and the obstruction of justice statute. Had the government sought a conviction under the omnibus clause based on a true but evasive or misleading statement to a grand jury, and had these arguments been presented to the Court, it is not at all clear that the Court would have read the statute as broadly as its dictum suggests.
It is possible that I am wrong and that I am required to regard the Court’s dictum in Aguilar as controlling. I do not believe that this is so, but if it is I encourage the Court to revisit, either in this ease or another, the question of the scope of the omnibus clause of § 1503(a). If the Court does revisit the question, I think it likely— perhaps very likely — that it will conclude, as I do, that the word “corruptly,” as used in § 1503(a), means “by bribery.”