Justice HUDSON
dissenting.
The majority concludes that N.C.G.S. § 14-202.5 (2013), which bars any registered sex offender from accessing any commercial social networking site on which he knows a minor can create or maintain a profile, is constitutional on its face and as applied to defendant. Because I conclude that the statute is unconstitutional on its face, I disagree with the majority’s reversal of the Court of Appeals. More specifically, I conclude that section 14-202.5 is not narrowly tailored enough to withstand even intermediate scrutiny and that it is facially overbroad under the First Amendment. Accordingly, I respectfully dissent.
As an initial matter, I agree with the majority opinion to the extent it concludes that N.C.G.S. § 14-202.5, by proscribing access to commercial social networking sites, targets sites which are used for “gathering information and [as] means of communication.” However, I do not agree with the later assertion that the statute primarily regulates conduct and places only an “incidental” burden on speech. This statute completely bars registered sex offenders from communicating with others through many widely utilized commercial networking sites. Therefore, in my view, it primarily targets expressive activity usually protected by *398 the First Amendment. See, e.g., Reno v. ACLU, 521 U.S. 844, 870, 117 S. Ct. 2329, 2344 (1997) (observing that previous cases from that Court “provide no basis for qualifying the level of First Amendment scrutiny that should be applied” to online activities); see also Brown v. Entm’t Merchs. Ass’n, _ U.S. _, _, 131 S. Ct. 2729, 2733 (2011) (“And whatever the challenges of applying the Constitution to ever-advancing technology, the basic principles of freedom of speech and the press, like the First Amendment’s command, do not vary when a new and different medium for communication appears.” (citation and internal quotation marks omitted)).
The majority finds the “four-factor test from [United States v. O’Brien, 391 U.S. 367, 88 S. Ct. 1673 (1968)] instructive” in applying intermediate scrutiny to what it sees as an “incidental” burden on speech. O’Brien involved a regulatory ban on burning of a draft card, which the Court saw as conduct having a “communicative element.” Id. at 376, 88 S. Ct. at 1678. Because I read O’Brien to apply only where the restriction primarily targets expressive conduct, and because the statute at issue here necessarily burdens speech directly, I would not apply O’Brien’s four-factor test here. See id., 88 S. Ct. at 1678-79 (“This Court has held that when ‘speech’ and ‘nonspeech’ elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.”). Instead, I would analyze this statute as one that, by design and in effect, primarily and directly regulates First Amendment-protected activity, not conduct.
Because this statute primarily regulates speech (and other protected activity), I would apply the scrutiny applicable to restrictions on speech. See, e.g., McCullen v. Coakley, _ U.S. _, _, 134 S. Ct. 2518, 2530 (2014); Holder v. Humanitarian Law Project, 561 U.S. 1, 26-28, 130 S. Ct. 2705, 2723-24 (2010). According to these cases, the next step would be to determine whether the statute is content-based or content-neutral. Content-based restrictions are “presumptively, unconstitutional” and can stand only if they survive strict scrutiny, the most difficult test in federal constitutional law. McCullen, _at _, 134 S. Ct. 2530. In contrast, content-neutral measures that burden speech are subject to a form of intermediate scrutiny — a still difficult but less exacting analysis. See id. at _, 134 S. Ct. 2530.
Here, applying the United States Supreme Court’s recent decision in Reed v. Town of Gilbert, _ U.S. _, 135 S. Ct. 2218 (2015), the majority concludes that N.C.G.S. § 14-202.5 is a content-neutral burden on conduct only incidentally affecting speech. While I think there is a strong *399 argument in light of Reed that the statute is content-based because it prohibits registered sex offenders from accessing some websites, but not others, based on the content that appears on the sites, I do not think we need to resolve this question because I conclude that the law cannot withstand even intermediate scrutiny.
The intermediate scrutiny standard applicable to content-neutral regulations on speech requires the government to demonstrate, inter alia, that the restriction is “narrowly tailored to serve a significant governmental interest.” McCullen, _ U.S. at _, 134 S. Ct. at 2534 (quoting Ward v. Rock Against Racism, 491 U.S.781, 796, 109 S. Ct. 2756, 2746 (1989)). More specifically,
[f]or a content-neutral time, place, or manner regulation to be narrowly tailored, it must not burden substantially more speech than is necessary to further the government’s legitimate [and significant] interests. Such a regulation, unlike a content-based restriction of speech, need not be the least restrictive or least intrusive means of serving the government’s interests. But the government still may not regulate expression in such a maimer that a substantial portion of the burden on speech does not serve to advance its goals.
Id. at _, 134 S. Ct. at 2535 (citations and internal quotation marks omitted). In short, when a statute “burden[s] substantially more speech than necessary to achieve the [government’s] asserted interests,” it will fail this form of intermediate scrutiny. Id. at _, 134 S. Ct. at 2537. Here, there is no dispute that the State’s purported concern — protecting minors from exploitation by registered sex offenders using the Internet — qualifies as a legitimate and significant government interest. The central question, then, is whether section 14-202.5 “burden[s] substantially more speech than necessary” in support of that interest. Id. at _, 134 S. Ct. at 2537.
I conclude that it does. First, the statute as written sweeps too broadly regarding who is subject to its prohibitions. As noted, the State’s interest here is in protecting minors from registered sex offenders using the Internet. However, this statute applies to all registered offenders. See § 14-202.5(a) (“It is unlawful for a [registered] sex offender... to access a commercial social networking Web site where the sex offender knows that the site permits minor children to become members or to create or maintain personal Web pages on the commercial social networking Web site.”). The statute is not restricted in application only to those whose offenses harmed a minor or in some way involved a computer or the *400 Internet, nor to those who have been shown to be particularly violent, dangerous, or likely to reoffend. This statute therefore groups together, without distinction, offenders whose history and past conduct directly implicate the State’s concerns with those who do not. To the extent the statute does so, it “burden[s]... more speech than necessary to achieve the [State’s] interests.” McCullen, U.S. at _, 134 S. Ct. at 2537.
.Second, as written, the statute also sweeps far too broadly regarding the activity it prohibits. The majority asserts that the statute prohibits “registered sex offenders from accessing only those Web sites that allow them the opportunity to gather information about minors.” But in fact, the statute contains no such limitation. Section 14-202.5 defines the term “commercial social networking Web site” as a website that (1) is operated by someone who derives revenue from the site; (2) facilitates “social introduction” or “information exchanges” between two or more people; (3) allows users “to create Web pages or personal profiles that contain information such as the name or nickname of the user, photographs placed on the personal Web page by the user, [or] other personal information about the user . .. that may be accessed by other users or visitors” to the site; and (4) provides “users or visitors mechanisms to communicate with other users.” N.C.G.S. § 14-202.5(b). I note in particular that the statute’s description of a “personal profile[ ],” and the language “such as” when referring to the information that can appear in such profiles, could bring within the statute’s scope many websites that allow users to register by going through the minimal process of creating a username and adding an email address or telephone number. As a result, this definition clearly includes sites that are normally thought of as “social networking” sites, like Facebook, Google+, Linkedln, Instagram, Reddit, and MySpace. However, the statute also likely includes sites like Foodnetwork.com, and even news sites like the websites for The New York Times and North Carolina’s own News & Observer. See The News & Observer Terms of Service, http://www.newsobserver.com/customer-service/terms-of-service/ (last visited Oct. 22,2015) (stating that “[i]f you are under eighteen (18) then you may only use NewsObserver.com with the consent of a parent or legal guardian” but not limiting registration on the site to adults). Most strikingly, the statute may even bar all registered offenders from visiting the sites of Internet giants like Amazon[1] and Google.
*401 In short, however legitimate — even compelling — the State’s interest in protecting children might be, the plausible sweep of the statute as currently written “create[s] a criminal prohibition of alarming breadth,” United States v. Stevens, 559 U.S. 460, 474, 130 S. Ct. 1577, 1588 (2010), and extends well beyond the evils the State seeks to combat. I therefore conclude that N.C.G.S. § 14-202.5 “burden[s] substantially more speech than necessary to achieve the [State’s legitimate] interests,” McCullen, _U.S. at _, 134 S. Ct. at 2537, and cannot survive even the intermediate scrutiny applied to content-neutral restrictions on speech.
In addition, for similar reasons, I conclude that this statute is also facially overbroad under the First Amendment. The overbreadth inquiry is very similar to the “narrow-tailoring” inquiry described above: First Amendment overbreadth doctrine requires a court to invalidate a statute that “prohibits a substantial amount of protected speech.” United States v. Williams, 553 U.S. 285, 292, 128 S. Ct. 1830, 1838 (2008). There is, however, one important nuance. Namely, while the Supreme Court of the United States has often invalidated specific applications of statutes under as-applied challenges, see, e.g., McCullen, _ U.S. at _, 134 S. Ct. at 2528, 2541, that Court has also made clear that First Amendment doctrine specifically permits litigants to make facial challenges based on overbreadth, see, e.g., Stevens, 559 U.S. at 473, 130 S. Ct. at 1587 (“In the First Amendment context, however, this Court recognizes a second type offacial challenge, whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute’s plainly legitimate sweep.” (emphasis added) (citation and internal quotation marks omitted)); Williams, 553 U.S. at 292, 128 S. Ct. at 1838 (“According to our First Amendment overbreadth doctrine, a statute is facially invalid if it prohibits a substantial amount of protected speech.”(emphasis added)). The Court has even noted that such a challenge is permitted when the challenger’s own conduct would clearly fall within the scope of the statute’s prohibition and the claim is based only on how that statute might apply to the activity of others. See, e.g., Humanitarian Law Project, 561 U.S. at 20, 130 S. Ct. at 2719 (“[A] plaintiff whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause of the Fifth Amendment for lack of notice. And he certainly cannot do so based on the speech of others. [But s]uch a plaintiff may have a valid overbreadth claim under the First Amendment. . . .”). In light of this precedent permitting such *402 challenges, and for the reasons noted above, I would hold that the statute at issue here, N.C.G.S. § 14-202.5, is facially overbroad and therefore unconstitutional, regardless of its application in this specific case.
For the foregoing reasons, I conclude that N.C.G.S. § 14-202.5 is both insufficiently narrowly tailored to satisfy intermediate scrutiny and facially overbroad under the First Amendment. Because I disagree with the majority’s conclusions to the contrary, I respectfully dissent.
Justice BEASLEY joins in this opinion.

. The statute does except from this definition any website that “[h]as as its primary purpose the facilitation of commercial transactions involving goods or services between its members or visitors." N.C.G.S. § 14-202.5(c)(2) (emphasis added). However, as defendant argues, “Amazon’s primary purpose is to facilitate transactions between Amazon *401 itself and its visitors, not between users of the Web site and other users.” (Emphasis added.) Accordingly, it appears that this exception does not actually apply to websites like Amazon, but only covers websites like Craigslist or eBay.