*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

JOHN MACAULEY BURKMAN,

    Defendant-Appellant.

FOR PUBLICATION
December 13, 2024
10:53 AM

No. 356600
Wayne Circuit Court
LC No. 20-004636-01-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

JACOB ALEXANDER WOHL,

    Defendant-Appellant.

No. 356602
Wayne Circuit Court
LC No. 20-004637-01-FH

---

ON REMAND

Before: LETICA, P.J., and REDFORD and RICK, JJ.

REDFORD, J. (*concurring in part and dissenting in part*).

For the reasons set forth below, I respectfully dissent from the majority's conclusion that affirms the denial of defendants' motion to quash and the circuit court's affirmance of that decision. Because I conclude defendants' conduct relates to the consequences of voting and not the procedures of voting, I would reverse the trial court and remand, directing an order to quash the bindover.

I concur, however, with the majority that there is sufficient evidence in the record to affirm the lower court's decision on the first and third elements of the Supreme Court's test. Specifically,

-1-

that there was probable cause to believe the speech involved was intentionally false and that it was an attempt to deter or influence an elector's vote.

The facts of this case are not in dispute, and the majority has correctly set forth the standard of review applicable to a district court's bindover decision.

Before the 2020 general election, defendants caused a prerecorded telephone message (robocall) to be made to voters in the Detroit area. The call stated as follows:

> Hi, this is Tamika Taylor from Project 1599, a civil rights organization founded by Jack Burman and Jacob Wohl. Mail-in voting sounds great, but did you know that if you vote by mail your personal information will be part of a public database that will be used by police departments to track down old warrants and be used by credit card companies to collect outstanding debts? The CDC is even pushing to use records from mail-in voting to track people for mandatory vaccines. Don't be finessed into giving your private information to the man. Stay safe and be aware of vote by mail. [*People v Burkman*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket Nos. 164638 & 164639); slip op at 2 (citation omitted).]

The robocall appears to have been an effort to dissuade the recipient of the call, African-American citizens, from voting by absentee ballot. The robocall was crude, inappropriate, offensive, and worthy of contempt. Indeed, these actions should be condemned as contrary to that which we strive for as a nation and as individuals.

As a result of the contents of the robocall and other evidence, defendants were bound over to the circuit court on charges of attempting to influence, deter, or interrupt electors, MCL 168.932(a);[1] conspiracy to commit that offense, MCL 750.157a; and two counts of using a computer to commit a crime, MCL 752.796. Defendants moved to quash the bindover and dismiss the charges, arguing that the robocall was not a "menace" or "other corrupt means or device" under MCL 168.932(a), and, if it was, MCL 168.932(a) was unconstitutional.

These arguments made their way to our Supreme Court, where the majority concluded that there was probable cause to believe that defendants' conduct fell under the "other corrupt means or device" provision of MCL 168.932(a). *Burkman*, ___ Mich at ___; slip op at 18-20. After holding that defendants' conduct was encompassed by MCL 168.932(a), the majority concluded that defendants' conduct was subject to constitutional free-speech protections and that the statutory

---

[1] MCL 168.932(a) provides as follows:

> A person who violates 1 or more of the following subdivisions is guilty of a felony:
>
> (a) A person shall not attempt, by means of bribery, menace, or other corrupt means or device, either directly or indirectly, to influence an elector in giving his or her vote, or to deter the elector from, or interrupt the elector in giving his or her vote at any election held in this state.

provision, "other corrupt means or device," was unconstitutionally overbroad. *Id*. at ___; slip op at 29, 31. Writing for the majority, Chief Justice CLEMENT explained the threat to political speech, a core tenant of democracy, posed by the provision:

> We hold that the statute's catchall "or other corrupt means or device" is unconstitutionally overbroad because it poses a "realistic danger" of infringing constitutional free-speech protections. See [*United States v Williams*, 553 US 285, 302; 128 S Ct 1830; 170 L Ed 2d 650 (2008)]. More specifically, the catchall in MCL 168.932(a) poses a substantial risk of chilling political speech. Political speech is "an essential mechanism of democracy," because it provides "the means to hold officials accountable to the people" and for the people "to make informed choices among candidates for office . . . ." *Citizens United v Fed Election Comm*, 558 US 310, 339; 130 S Ct 876; 175 L Ed 2d 753 (2010) (quotation marks and citation omitted). For these reasons, political speech has been historically protected under the First Amendment and laws that burden it are subject to strict scrutiny. *Id*.; *Susan B Anthony List v Driehaus*, 814 F3d 466, 473 (CA 6, 2016) ("Political speech is at the core of First Amendment protections.").

> The broad sweep of the catchall language in MCL 168.932(a) conceivably prohibits several forms of purely political speech, including statements made via campaign speeches, rallies, door-to-door campaigning, flyers, and buttons. These political materials are often designed to influence an elector's vote, whether it be to affirmatively vote for a candidate or proposal, not to vote for a candidate or proposal, or not to vote at all, and so satisfy MCL 168.932(a)'s provision that a person be attempting "to influence an elector in giving his or her vote, or to deter the elector from, or interrupt the elector in giving his or her vote at any election held in this state." Although the term "corrupt" in the catchall provision limits MCL 168.932(a)'s scope, it remains likely that political speech is encompassed by "any other depraved or immoral method or scheme" in influencing or deterring votes. For example, one may consider a person posting false information online about a candidate in an effort to influence electors not to cast their votes for the candidate an immoral scheme, thus fulfilling the catchall phrase of MCL 168.932(a). See *United States v Alvarez*, 567 US 709, 718; 132 S Ct 2537; 183 L Ed 2d 574 (2012) (providing that false statements are generally within constitutional protection). Although the state has an undeniable interest in protecting the electors' franchise, see *Mich Alliance for Retired Americans v Secretary of State*, 334 Mich App 238, 257; 964 NW2d 816 (2020), and in "preserving the integrity of their election processes," *In re Request for Advisory Opinion*, 479 Mich 1, 19; 740 NW2d 444 (2007), that right is not absolute. Laws enacted to preserve these interests must still be narrowly drawn to avoid chilling more speech than is necessary, and the catchall provision in MCL 168.932(a) is not. We conclude that the statute regulates substantially more political speech than its plainly legitimate sweep allows. [*Burkman*, ___ Mich at ___; slip op at 31-32.]

As a remedy for infringing on constitutionally protected speech, the majority constructed a limiting test aimed at "limiting the statute's reach to areas where government regulation is constitutionally provided or has been historically upheld." *Id*. at 33. The majority derived this

test from the states' authority to regulate the time, place, and manner of congressional elections. US Const, art 1, § 4, cl 1; Const 1963, art 2, § 4(2) (providing the Michigan Legislature with the same authority to regulate the time, place, and manner of state elections). The limiting test provides that when the charged conduct is solely speech and does not fall under any exception to constitutional free-speech protections, the catchall phrase in MCL 168.932(a) only proscribes that speech if it is:

> (1) intentionally false speech;
>
> (2) that is related to voting requirements or procedures; and
>
> (3) is made in an attempt to deter or influence an elector's vote. [*Burkman*, ___ Mich at ___; slip op at 33.]

After constructing this test, the majority remanded this case back to this Court to decide whether defendants' conduct is encompassed by the limiting construction of MCL 168.932(a).

On remand, the issue before this Court is not whether the robocalls are a stain on our republic—they are. The issue is whether defendants' conduct satisfies the three-part test set forth by our Supreme Court such that defendants can be prosecuted under MCL 168.932(a). I cannot join the majority of this Court's conclusion that there is probable cause to believe defendants' conduct is encompassed by the second element of the limiting test.

As to the first part of the test, given the deferential standard of review of the bindover judicial officer's factual conclusions, I do not disagree with the majority that there is enough evidence on this element.

I likewise agree with the majority that there is probable cause to believe that the third part of the test is met in this case. Indeed, at defendants' preliminary examination, testimony was presented regarding e-mails exchanged between defendants discussing their desire to "hi-jack" the 2020 election and their arrangements to disseminate the robocall "to black neighborhoods in Milwaukee, Detroit, Philadelphia, Charlotte, Richmond, Atlanta, and Cleveland." These e-mails, combined with the targeted nature and content of the robocalls, provide probable cause to believe that the robocalls were made in an attempt to deter or influence an elector's vote.

I focus my analysis on the second part of the limiting test. There is no dispute that defendants' conduct did not relate to voting requirements. However, the majority concludes that defendants' conduct related to voting procedures on the basis that the robocall relayed the alleged negative consequences of engaging in absentee voting. Because I conclude that the consequences of engaging in absentee voting are not related to the manner and means of voting, I would hold that the second part of the Supreme Court's test has not been satisfied.

The speech encompassed by MCL 168.932(a) must "relate[] to voting requirements or procedures." *Id*. Because these terms are not defined in the statute, this Court may consult dictionaries to construe these terms in accordance with their ordinary and generally accepted meanings. *People v Lewis*, 302 Mich App 338, 342; 839 NW2d 37 (2013). "Requirements" are defined as "something required," "something wanted or needed : NECESSITY," or "something essential to the existence or occurrence of something else : CONDITION." *Merriam-Webster's*

*Collegiate Dictionary* (11th ed). Evident from these definitions, voting requirements are the qualifications one must meet to be eligible to vote, such as being at least 18 years old and a citizen of the United States. "Procedure" is defined as "a particular way of accomplishing something or of acting" or "a series of steps followed in a regular definite order." *Merriam-Webster's Collegiate Dictionary* (11th ed). These definitions relate to the manner and means by which voting is accomplished, such as the date and time of elections and the process of casting a vote.[2] The phrase "related to" is defined as "to connect (something) with (something else)." Merriam-Webster Dictionary, *Definition of related to* <https://www.merriam-webster.com/dictionary/related%20to> (accessed October 29, 2024). Together, these phrases show that the limiting test applies to false statements connected to the qualifications and mechanics of voting.

For example, focusing on voting procedures, a robocall that falsely informs voters that the polls will remain open three hours late, see *Burkman*, ___ Mich at ___; slip op at 18 n 11, or falsely informs voters that they may cast a ballot via text message, see *United States v Mackey*, 652 F Supp 3d 309, 320 (ED NY, 2023), would violate MCL 168.932(a). Likewise, in the context of absentee voting, a robocall that informs voters that the deadline for turning in an absentee ballot was extended would also violate MCL 168.932(a). These examples each relate to the mechanics of voting.

Nothing in this malicious call related to the mechanics of absentee voting. There are no false statements about the steps by which voting by mail is accomplished Rather, the robocall addressed the alleged actions that entities unrelated to the regulation of elections—in this case, police departments, credit card companies, and the CDC—could take using absentee voter database. These entities' possible use of the voter database says nothing about the mechanics by which voting by mail occurs. The robocall related to the alleged consequences of absentee voting.

The majority concludes that the robocall satisfies the second element of the limiting test on the basis that consequences cited by the robocall are related to a voting procedure. In support of this conclusion, the majority explains that the definition of procedure, "a series of steps followed in a regular and definite order," contemplates that the procedure will incorporate one act after the other, and consequences fall within that definition. Plainly stated, the majority classifies the alleged consequences of absentee voting as a step in the procedure of absentee voting itself. I would not classify possible consequences, in this case, how entities unrelated to the regulation of absentee voting may use data which could possibly be collected through absentee voting, as a step in the procedure of absentee voting.

Cases such as this "present[] us with a particularly difficult reconciliation: the accommodation of the right to engage in political discourse with the right to vote—a right at the heart of our democracy." *Burson v Freeman*, 504 US 191, 198; 112 S Ct 1846; 119 L Ed 2d 5 (1992) (plurality opinion). The majority's construction of the limiting test presents a serious risk of overregulating pure political speech and creates the chilling effect that our Supreme Court

---

[2] The Secretary of State is entrusted with the promulgation of rules for the conduct of elections and registration. MCL 168.31(1)(a). Voting by mail, i.e., absentee voting, is one such voting procedure for which the Secretary of State has promulgated various rules. See Mich Admin Code, R 168.21 *et seq*.

sought to avoid when crafting the limiting test.  See *Burkman*, ___ Mich at ___; slip op at 31-32.  It begs the question whether there is a scenario in which a false claim addresses absentee voting that is not covered by the limiting test?  For example, would the phrase, "Do not vote by absentee ballot, it is rigged," also fit the majority's interpretation?

The First Amendment's protection of political speech extends to loathsome and unpopular speech.  See *Bible Believers v Wayne Co*, 805 F3d 228, 243 (CA 6, 2015) ("The First Amendment offers sweeping protection that allows all manner of speech to enter the marketplace of ideas.  This protection applies to loathsome and unpopular speech with the same force as it does to speech that is celebrated and widely accepted.").  This Court should entrust the populace to be able to discern truth and falsehood in the marketplaces of ideas.  As expressed by President John F. Kennedy:

> We are not afraid to entrust the American people with unpleasant facts, foreign ideas, alien philosophies, and competitive values.  For a nation that is afraid to let its people judge the truth and falsehood in an open market is a nation that is afraid of its people.  The American Presidency Project, *Remarks on the 20th Anniversary of the Voice of America* <https://www.presidency.ucsb.edu/documents/remarks-the-20th-anniversary-the-voice-america> (accessed October 29, 2024).

I conclude the conduct alleged did not relate to voting requirements or procedures, but rather the consequences of voting.  I would, therefore, reverse the decisions of the lower courts regarding bindover and remand to the trial court for the purpose of quashing the information as to both defendants.[3]

/s/ James Robert Redford

---

[3] I acknowledge in my partial concurrence and partial dissent in this Court's previous opinion in this matter that I joined the majority in affirming the bindover on the basis that the speech was integral to criminal conduct.  *People v Burkman*, 341 Mich App 734, 765; 992 NW2d 341 (2022) (REDFORD, J., concurring).  The Supreme Court, however, concluded that  the speech-integral-to-criminal-conduct exception did not apply to the circumstances of this case.  *Burkman*, ___ Mich at ___; slip op at 26-28.