# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 13, 2025

Lyle W. Cayce
Clerk

No. 24-20271

_____

United States of America,

*Plaintiff—Appellee,*

*versus*

Matthew Clark,

*Defendant—Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:22-CR-55-1

_____

Before Higginbotham, Willett, and Ho, *Circuit Judges*.

Per Curiam:[*]

Matthew Clark pleaded guilty to nine counts of conspiracy to commit honest services fraud, honest services fraud, prohibited commodities transactions, and insider trading. He appeals his convictions, arguing that his convictions were based on unconstitutionally vague statutes and violate the separation of powers and nondelegation doctrines. We disagree and affirm the district court's judgment.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-20271

## Background

Clark's convictions arise from two unlawful schemes he perpetrated against his employer, Company B, from 2010 to 2019. From 2010 to 2019, rather than find the best deal for his employer, Clark steered Company B's trading business to a brokerage firm called Classic Energy, LLC (Classic Energy), owned by broker Matthew Webb. In return, Company B paid commission fees to Classic Energy, which were split between Clark and Webb and funneled through intermediaries, including members of Clark's family. In total, Webb paid Clark $5,543,662 in illegal kickbacks.

The second scheme underlying Counts Six and Eight also involved dealings between Webb and Clark, this time spanning from April 2013 to September 2019. As part of his role at Company B, Clark had access to confidential proprietary information, including the company's trading strategies and intentions. During this time, Clark shared Company B's intended trades with Webb, who passed the information to their coconspirators. These coconspirators took opposite positions on the trades and made offsetting trades using Company B's confidential information. The prearranged counterparties then shared the profits from these trades with Webb and Clark.

At the same time, Clark continued to take annual employee trainings, where he was reminded of the relevant statutes and industry regulations, including prohibitions on prearranging trades, insider trading, and reporting prices that were not "true and bona fide."

In total, the profits from this scheme to Clark and his coconspirators exceeded $2.1 million.

After the discovery of his conduct, Clark received a nine-count indictment in the Southern District of Texas charging him with:

2

No. 24-20271

- One count of conspiracy to commit honest services wire fraud, in violation of 18 U.S.C. §§ 1343, 1346, and 1349. (Count One)
- Three substantive counts of honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346. (Counts Two, Three, and Four)
- One count of conspiracy to engage in prohibited commodities transactions and insider trading, in violation of 18 U.S.C. § 371; 7 U.S.C. §§ 6c(a), 9(1), 13(a)(5); and 17 C.F.R. § 180.1. (Count Five)
- Two substantive counts of prohibited commodities transactions, in violation of 7 U.S.C. §§ 6c(a) and 13(a)(2). (Counts Six and Seven)
- Two substantive counts of insider trading, in violation of 7 U.S.C. §§ 9(1) and 13(a)(5) and 17 C.F.R. § 180.1. (Counts Eight and Nine)

Clark filed a pretrial motion to dismiss all charges in the indictment on constitutional vagueness grounds. The district court denied the motion. Clark then pleaded guilty to Counts One, Six, and Eight of the indictment but reserved the right to appeal the denial of his motion to dismiss the indictment.

The district court then sentenced Clark to 78 months of imprisonment, followed by three years of supervised release. He was also ordered to pay $7,709,509 in restitution, a $300 special assessment, and forfeit $6,532,360.

## Analysis

Clark raises three constitutional challenges to his conviction. First, he argues that 18 U.S.C. § 1346, which proscribes honest services fraud, is unconstitutionally vague. Second, he argues that the statutes and regulations

criminalizing "fictitious sales," sales without a "true and bona fide price," and insider trading are also unconstitutionally vague. Third, he argues that Congress violated the separation of powers doctrine when it delegated authority to the CFTC to promulgate rules with criminal penalties. Additionally, he argues that this delegation violates the nondelegation doctrine because it lacks an intelligible principle.

We review constitutional challenges to criminal statutes de novo. *See, e.g.*, *United States v. De Bruhl*, 118 F.4th 735, 745 (5th Cir. 2024).

## I.

Clark's lead argument is that his convictions for honest services fraud and conspiracy to commit honest services fraud under 18 U.S.C. § 1346 are invalid because 18 U.S.C. § 1346 is unconstitutionally vague.

But this argument is foreclosed by the Supreme Court's holding in *Skilling v. United States*, 561 U.S. 358 (2010). In *Skilling*, the Court chose to "construe, not condemn" section 1346, by applying a "limiting construction" to save § 1346. *Id.* at 403–05. In doing so, the Court upheld section 1346's constitutionality as to kick-back schemes. *Id.* at 409.

*Skilling* is the Court's last word on section 1346's constitutionality. To be sure, the Court in *United States v. Davis*, 588 U.S. 445, 463–65 (2019), disfavored construing a statute to avoid vagueness. And two justices have expressed doubt as to the constitutionality of honest services fraud. *See Percoco v. United States*, 598 U.S. 319, 333–35 (2023) (Gorsuch, J., concurring in the judgment). But the Court has not overruled *Skilling*. And our court is not in the business of overturning Supreme Court precedent. *See United States v. Rahimi*, 117 F.4th 331, 334 (5th Cir. 2024) (Ho, J., concurring) ("The Supreme Court can adjust or amend its own precedents at its discretion. Inferior courts have no such luxury.").

## II.

Clark next raises void for vagueness challenges to 7 U.S.C. § 6c, 7 U.S.C. § 9(1), and 17 C.F.R. § 180.1. But these arguments fare no better than his lead argument.

The vagueness doctrine "rests on the twin constitutional pillars of due process and separation of powers." *Davis*, 588 U.S. at 451. Accordingly, criminal statutes must be clear enough that "ordinary people can understand what conduct is prohibited." *Beckles v. United States*, 580 U.S. 256, 262 (2017) (citation omitted). They must be defined "in a manner that does not encourage arbitrary and discriminatory enforcement." *Id.*

When evaluating vagueness, we apply the traditional rules for statutory interpretation. *See United States v. Williams*, 553 U.S. 285, 306 (2008). So we start, "as we always do, with the text." *Sackett v. Env't Prot. Agency*, 598 U.S. 651, 671 (2023).

## A.

First, Clark argues that the terms "fictitious sale" and "not a true and bona fide price" within 7 U.S.C. § 6c of the Commodity Exchange Act (CEA) are unconstitutionally vague. The CEA prohibits people from "offer[ing] to enter into, enter[ing] into, or confirm[ing] the execution of a . . . *fictitious sale*; or . . . to cause any price to be reported, registered, or recorded that is *not a true and bona fide price*." 7 U.S.C. §§ 6c(a)(1), (2)(A)(ii)–(B) (emphasis added).

But the ordinary meaning of these terms plainly contemplate deception. "Fictitious" means "[f]ounded on a fiction . . . false, feigned, or pretended . . . imaginary . . . [or] [a]rbitrarily invented and set up to accomplish an ulterior object." *Fictitious*, BLACK'S LEGAL DICTIONARY 773 (3d ed. 1933). Similarly, a price that isn't "true and bona fide" is not

"honest[], open[], and sincere[], and without deceit or fraud." *Bona Fide*, Black's Legal Dictionary 233 (3d ed. 1933).

So we do not see how these provisions are unconstitutionally vague, unless the very concept of falsity is too vague for Congress to prohibit. And Clark appears to concede as much. During oral argument, his counsel admitted that, under his theory, it would be unconstitutionally vague if Congress tried to enact any statute that said: "You cannot commit falsity about price." Oral Arg. at 29:18. But that cannot be right. The Constitution surely does not forbid Congress from prohibiting deception.

## B.

Second, Clark seeks to overturn his "insider trading" convictions, arguing that the phrase "manipulative or deceptive device or contrivance" in 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1 is unconstitutionally vague.

But the Supreme Court has previously given an authoritative construction to similar language in the context of the Securities Exchange Act of 1934. And "[w]hen a statutory term is obviously transplanted from another legal source, it brings the old soil with it." *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019) (cleaned up) (citation omitted).

The operative language in 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1 is an exact transplant from section 10(b)-5 of the Securities Exchange Act. And that language has a well-settled interpretation. In *United States v. O'Hagan*, 521 U.S. 642 (1997), the Supreme Court held that the misappropriation of confidential information for trading purposes, in violation of fiduciary duties, "satisfies § 10(b)'s requirement that chargeable conduct involve a 'deceptive device or contrivance.'" *Id.* at 653 (citation omitted). The Court added that a fiduciary's undisclosed and "self-serving use of a principal's information . . . in breach of a duty of loyalty and confidentiality, defrauds the principal." *Id.* Trading on that information "involves feigning fidelity to the

source of information" and so is a "deceptive device" under § 10(b). *Id.* at 655. And the Court has cited *O'Hagan* to conclude that "Section 10(b) of the Securities Exchange Act of 1934 and the Securities and Exchange Commission's Rule 10b-5 prohibit undisclosed trading on inside corporate information by individuals who are under a duty of trust and confidence that prohibits them from secretly using such information for their personal advantage." *Salman v. United States*, 580 U.S. 39, 41 (2016) (citing *O'Hagan*, 521 U.S. at 650–52).

## III.

Clark's final argument is that Congress violated the separation of powers and nondelegation doctrines because it attached criminal penalties to the violation of CFTC regulations and did not provide the CFTC with an intelligible principle to guide its rulemaking. We disagree.

7 U.S.C. § 9(1) makes it unlawful to use or employ "any manipulative or deceptive device or contrivance" in violation of CFTC rules. Similarly, 7 U.S.C. § 13(a)(5) criminalizes willful violation of "any other provision of this chapter, or any rule or regulation" enacted by the CFTC. Under governing Supreme Court precedent, these provisions do not violate the separation of powers doctrine. "There is no absolute rule . . . against Congress' delegation of authority to define criminal punishments." *Loving v. United States*, 517 U.S. 748, 768 (1996). All that is required is that "Congress make[] the violations of regulation a criminal offense and fix[] the punishment, and the regulations confine themselves within the field covered by the statute." *Id.* (quotation marks and citation omitted).

In addition, 7 U.S.C. § 9(1) provides the CFTC with an intelligible principle to guide its rulemaking. As explained above, the term "manipulative or deceptive device or contrivance" has already received an authoritative interpretation by the Supreme Court in the Securities Exchange

No. 24-20271

Act context.  So we can conclude that Congress directed the CFTC to prevent commodities traders from using confidential information for their personal advantage.  That is sufficient under the Court's current "intelligible principle" standard.

\* \* \*

For these reasons, we affirm.