24-621 (L)
Murray Enters. v. City of New York

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of July, two thousand and twenty-five.

PRESENT:    Steven J. Menashi,
            Myrna Pérez,
            Alison J. Nathan,
                    *Circuit Judges.*

_____

557 ENTERTAINMENT INC., DCD EXCLUSIVE VIDEO INC., VIDEO LOVERS INC., JAYSARA VIDEO, INC., VISHARA VIDEO, INC., RAINBOW STATION 7 INC., CLUB AT 60TH STREET, INC., a Delaware corporation, JACARANDA CLUB, LLC, a New York limited liability company, DBA Sapphire, 59 MURRAY ENTERPRISES, INC., AKA 59 Murray Corp., DBA New York Dolls, AAM HOLDING CORP., DBA Private Eyes, JNS VENTURES LTD, DBA Vixen, TWENTY WEST PARTNERS, INC., DBA Wonderland, 689 EATERY, CORP., DBA Satin

Dolls, 725 EATERY, CORP., Substituting for MLB
Enterprises, Corp., DBA Platinum Dolls,

      *Plaintiffs-Appellants*,

    v.
                                     Nos. 24-621 (Lead),
                                              24-623 (Con),
                                            24-636 (Con),
                                            24-640 (Con)

CITY OF NEW YORK, HON. ERIC ADAMS, as
Mayor of the City of New York, JAMES S. ODDO,
as the Commissioner of Buildings, DEPARTMENT
OF BUILDINGS OF THE CITY OF NEW YORK,

      *Defendants-Appellees.*[*]

_____

| | |
|---|---|
| *For Plaintiffs-Appellants*: | EDWARD S. RUDOFSKY, Zane and Rudofsky, Melville, New York; ERICA T. DUBNO, Fahringer & Dubno, New York, New York; G. RANDALL GARROU (Jerome Mooney, *on the brief*), Weston, Garrou & Mooney, Los Angeles, California; Jeffrey M. Nye, Stagnaro, Saba & Patterson, Cincinnati, Ohio. |
| *For Defendants-Appellees*: | ELINA DRUKER (Richard Dearing, Ingrid R. Gustafson, *on the brief*), *for* Muriel Goode-Trufant, Acting Corporation Counsel of the City of New York, New York, New York. |

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

Appeal from a judgment of the United States District Court for the Southern District of New York (Liman, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED**.

The plaintiffs-appellants are companies in the adult entertainment business. Eight of the plaintiffs operate or lease space to strip clubs and topless bars, and the other six plaintiffs rent or sell adult books and videos. In 1995, New York City adopted new zoning laws that restrict where adult businesses may operate. The regulations did not reach so-called "60/40" establishments, those businesses at which less than 40 percent of the floorspace or less than 40 percent of a store's stock-in-trade does not feature adult entertainment or media. The plaintiffs operate businesses of this type and were not affected by the City's 1995 regulations. In 2001, the City amended its zoning laws to limit or to remove the 60/40 rule, bringing the plaintiffs within the reach of the restrictions for adult establishments under the zoning laws. Following a bench trial, the district court held that the 2001 amendments did not violate the Constitution and entered judgment for the defendants. *See 689 Eatery Corp. v. City of New York*, 716 F. Supp. 3d 88 (S.D.N.Y. 2024).

On appeal, the plaintiffs argue that the 2001 amendments violate the Free Speech Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. The bookstore plaintiffs also raise a challenge under the Due Process Clause of the Fourteenth Amendment. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal.

**I**

The plaintiffs argue that the City's 2001 amendments violate their rights under the First Amendment. We disagree.

While the First Amendment protects adult expression, it also allows a municipality to regulate adult entertainment establishments. *See TJS of N.Y., Inc. v. Town of Smithtown*, 598 F.3d 17, 20-21 (2d Cir. 2010). As part of its zoning power, a city may prohibit adult establishments from operating in certain areas. *See Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50 (1976); *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425 (2002). Even in areas where adult-oriented businesses are allowed, a city may prohibit such businesses from operating close to churches, parks, schools, residential areas, or other adult establishments. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 44, 54 (1986).

The Supreme Court has explained that a city may regulate adult establishments in this way to attempt to minimize the harmful "secondary effects" that may accompany adult-oriented businesses, including crime, decreased property values, and urban decay. *Alameda Books*, 535 U.S. at 434 (plurality opinion). To exercise this authority consistent with the First Amendment, a city cannot "use[] the power to zone as a pretext for suppressing expression." *Renton*, 475 U.S. at 54 (internal quotation marks omitted). But it can restrict the permissible locations of adult businesses to "preserv[e] the quality of life in the community at large." *Id.* "This, after all, is the essence of zoning." *Id.*

To determine whether a zoning law complies with the First Amendment, we consider three issues. First, we ask whether the zoning ordinance "ban[s] adult [establishments] altogether" or "merely require[s] that they be distanced from certain sensitive locations." *Alameda Books*, 535 U.S. at 434 (plurality opinion). If the latter, the regulations operate like time-place-and-manner regulations of speech. Second, if the zoning ordinance does not ban adult businesses altogether, we ask whether the ordinance is content-based or content-neutral. An ordinance applying solely to adult establishments is not content-based so long as it is "aimed" at "the secondary effects" of those establishments "on the surrounding community." *Renton*, 475 U.S. at 47 (emphasis omitted). Third, if the zoning ordinance is content-neutral, it does not violate the First Amendment if the city can show that the "ordinance is designed to serve a substantial governmental

interest and allows for reasonable alternative avenues of communication." *Id.* at 50.

This is not the first time we have considered the constitutionality of the zoning laws that New York City applies to adult businesses. In *Buzzetti v. City of New York*, we examined the City's 1995 zoning amendments that regulated adult establishments, defined as those businesses in which a "substantial portion" of the establishment was (1) used as an "adult book store" or (2) as an "adult eating or drinking establishment" that "regularly feature[d]" explicit entertainment. 140 F.3d 134, 136 (2d Cir. 1998). We held that the 1995 zoning laws did not ban adult businesses altogether and were not "aimed at suppressing" unfavorable viewpoints. *Id.* at 140. Instead, the zoning laws targeted "the negative impact" of adult establishments "on the surrounding community." *Id.* New York City had presented sufficient evidence that adult establishments could cause negative effects such as crime, decreased property values, and urban decay, and we explained that mitigating those effects qualifies as a "substantial governmental interest[]." *Id.* Finally, the City had shown that there were 500 "alternative sites" available for the 177 exiting adult establishments that would be affected by the new zoning regulations. *Id.* at 141. As a result, we held that the City's zoning laws did "not violate the First Amendment." *Id.*

Those holdings largely resolve this case. The 2001 amendments modified the definition of an adult establishment, but in doing so the amendments did not alter the preexisting regulatory framework. In the 2001 amendments, the City determined that whether a business qualified as an "adult eating or drinking establishment" would not depend on the amount of floor space devoted to adult entertainment. If an eating or drinking establishment "regularly features" such entertainment, it qualifies as an "adult eating or drinking establishment" regardless of the square footage the entertainment occupies. N.Y.C. Zoning Resol. § 12-10(1)(b); *see also 689 Eatery Corp.*, 716 F. Supp. 3d at 130. Similarly, the 2001 amendments determined that a bookstore with certain features—such as booths for viewing pornographic videos—qualifies as an adult bookstore under the

zoning laws regardless of the percentage of floor space or stock the business devotes to non-adult entertainment. *See* N.Y.C. Zoning Resol. § 12-10(2)(d); *689 Eatery Corp.*, 716 F. Supp. 3d at 131.

These modified definitions do not alter our prior conclusions about the City's zoning scheme. Nothing in our earlier analysis required the City to define an adult eating or drinking establishment by reference to the amount of floor space or stock allocated to adult entertainment. We did not imply, for example, that the City's zoning scheme would be unlawful if it reached businesses in which lap dances or strip teases take place in one third of the accessible floor space instead of one half. And our holding in *Buzzetti* did not require the City to allow a bookstore with "peep booths" to operate next to schools and churches simply because the bookstore had non-adult titles in its inventory. *689 Eatery Corp.*, 716 F. Supp. 3d at 133. *Buzzetti* upheld the City's zoning amendments because the amendments aimed at mitigating the harmful effects of adult businesses and because the amendments offered reasonable alternative sites where adult businesses could relocate. None of those conclusions are undermined by the City's modified definitions. *See Buzzetti*, 140 F.3d at 141.

In any event, the City has offered valid explanations for the changes. The City found through its enforcement efforts that the original zoning amendments allowed for "superficial and sham compliance." *689 Eatery Corp.*, 716 F. Supp. 3d at 128. For example, to ensure that its adult stock remained under 40 percent, many adult bookstores would purchase boxes of "old instructional videos, kung-fu or karate films, cartoons and the like, which are inexpensive to purchase in bulk," and then "haphazardly" stock those materials or simply leave the boxes "open[] on the floor." *Id.* at 125. And the "artificial separation" between adult and non-adult sections at adult eating and drinking establishments led to "absurd" results. *Id.* (alteration omitted). Even if a topless bar or strip club featured non-adult entertainment or dining options, those features did not alter the nature of the establishment because no customers patronized the establishment without regard to its adult character. *See* Department of City Planning Zoning Amendment Application at 8-9, *689 Eatery Corp. v. City of New York*, No. 02-CV-04431 (S.D.N.Y.

May 9, 2022), ECF No. 162-5. The City reasonably concluded that a bookstore with peep booths remains an adult bookstore even if it offers boxes of kung fu movies, and a strip club remains a strip club even if it has a billiards room upstairs. As the New York Court of Appeals has explained:

> A store that stocks nonadult magazines in the front of the store but contains and prominently advertises peep booths is no less sexual in its fundamental focus just because the peep booths are in the back and the copies of Time magazine in the front. The same is true of the adult eating and drinking establishments. A topless club is no less an adult establishment if it has small signs and the adjoining comedy club, seating area, or bikini bar is easy to access.

*For the People Theatres of N.Y. Inc. v. City of New York*, 29 N.Y.3d 340, 361 (2017). The First Amendment does not prohibit that commonsense approach.

When it proposed the 2001 amendments, the City determined that the changes were necessary to address "superficial and formalistic measures" by adult businesses "which do not alter the character of the establishments." CEQR Negative Declaration and Environmental Assessment Statement at 2, *689 Eatery Corp. v. City of New York*, No. 02-CV-04431 (S.D.N.Y. May 9, 2022), ECF No. 162-5. Variations in floor space or stock did not affect the businesses' "predominant, on-going focus on sexually explicit materials or activities." *Id.* The City could "reasonably believe[]" that such establishments will present the same problems as other adult venues. *City of Renton*, 475 U.S. at 51. And the City has once again provided evidence that there are over a thousand available lots where the thirty-two affected establishments could legally operate—including 204 lots that could be used simultaneously while maintaining the required buffer between each adult establishment. *See 689 Eatery Corp.*, 716 F. Supp. 3d at 169-70; Consolidated Statement of Stipulated Facts at 78, *336 LLC v. City of New York*, No. 18-CV-3732 (S.D.N.Y. May 25, 2023), ECF No. 168-1. We therefore adhere to our precedent holding that the zoning laws, even as modified by the 2001 amendments, are "content-neutral time, place, and manner regulation[s], [are] justified by

7

substantial government interests and allow[] for reasonable alternative avenues of communication, and, accordingly, do[] not violate the First Amendment." *Buzzetti*, 140 F.3d at 141.[1]

## II

The plaintiffs argue that the 2001 amendments violate the Equal Protection Clause of the Fourteenth Amendment by treating adult establishments differently from other regulated entities. This claim restates the First Amendment claim and likewise fails.

The Fourteenth Amendment prohibits a state from "deny[ing] to any person … the equal protection of the laws." U.S. Const. amend. XIV, § 1. Laws that turn on suspect classifications or that impinge on fundamental rights warrant heightened scrutiny, but others receive only rational-basis review. *Romer v. Evans*, 517 U.S. 620, 631 (1996). States must "treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). Adult establishments are not a suspect class under the Fourteenth Amendment, but the 2001 amendments do affect a fundamental right—the freedom of speech. As explained above, however, the zoning scheme satisfies the heightened scrutiny that the First Amendment requires in this context. To the extent that the plaintiffs assert an equal protection claim that does not depend on a violation of the First Amendment, rational-basis review applies. *See Clementine Co., LLC v. Adams*, 74 F.4th 77, 89 (2d Cir. 2023) (applying rational-basis review to a law burdening free speech "because it does not violate Plaintiffs' First Amendment rights").

The 2001 amendments satisfy rational-basis review. The City has a legitimate interest in curbing the negative secondary effects associated with adult establishments, and the zoning requirements are a rational means of advancing

---

[1] For the purposes of a facial challenge, the plaintiffs have not met the burden of showing that the 2001 amendments "prohibit[] a substantial amount of protected speech … relative to the [amendments'] plainly legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008). "Invalidation for overbreadth is strong medicine that is not to be casually employed." *Id.* at 293 (internal quotation marks omitted).

that interest. *See Kane v. De Blasio*, 19 F.4th 152, 166 (2d Cir. 2021) ("Rational basis review requires the City to have chosen a means for addressing a legitimate goal that is rationally related to achieving that goal.").

## III

The bookstore plaintiffs argue that the 2001 amendments violate the Due Process Clause of the Fourteenth Amendment. According to the bookstore plaintiffs, the amendments violate the substantive due process right of the bookstores to use their existing lots as adult bookstores. *See DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 130 (2d Cir. 1998). We disagree.

While framed as a substantive due process challenge, the bookstore plaintiffs are again repeating the claim that the 2001 amendments violate the First Amendment. But "where another provision of the Constitution provides an explicit textual source of constitutional protection, a court must assess a plaintiff's claims under that explicit provision and not the more generalized notion of substantive due process." *Southerland v. City of New York*, 680 F.3d 127, 142-43 (2d Cir. 2012) (quoting *Kia P. v. McIntyre*, 235 F.3d 749, 757-58 (2d Cir. 2000)); *see also Hu v. City of New York*, 927 F.3d 81, 103 (2d Cir. 2019). Having rejected the First Amendment claim, we likewise reject the plaintiffs' substantive due process argument. *See 20 Dogwood LLC v. Village of Roslyn Harbor*, No. 23-930, 2024 WL 1597642, at *1 (2d Cir. Apr. 12, 2024) ("This more specific constitutional protection, rather than the more general notion of substantive due process, thus provides the framework for evaluating Plaintiffs' claims.").

\* \* \*

9

We have considered the plaintiffs' remaining arguments, which we conclude are without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court